## JACOBS v. FIRST NAT. BANK OF SHREVEPORT et al.

District Court, W. D. Louisiana, Shreveport Division. August 1, 1929.

No. 1782.

Samuel F. Hyman, of New York City, for plaintiff.

Blanchard, Goldstein & Walker, of Shreveport, La., for defendants.

DAWKINS, District Judge. Alleging herself to be a resident and citizen of the state of New York, owning "more than twenty shares" of the capital stock of Florsheim Bros. Dry Goods Company, Limited, having a value in excess of $10,000, plaintiff brings this suit against the First National Bank of Shreveport, La. (hereinafter called the bank), Andrew Querbes, Dave Mendelsohn, William L. Young, Ollie Biedenharm, J. Homer Jordan, and Seymour L. Florsheim, all citizens of the state of Louisiana, and the said Florsheim Bros. Dry Goods Company, Limited (hereinafter called the Dry Goods Company), a corporation under the laws of said state, and for cause of complaint charges:

That some time during the year 1925, the exact date being unknown to petitioner, defendants Querbes, Young, Jordan, Biedenharn, and Mendelsohn entered into a conspiracy to obtain control of the affairs and business of the Dry Goods Company, for the purpose of obtaining, in a manner agreed upon by them, the payment of an alleged indebtedness to said bank, of which Querbes was president, Jordan vice president and director, Young also being vice president and director, and the said Biedenharn was a director, "which alleged indebtedness was not in law or fact a debt from or by said cor-

poration, and for the purpose of acquiring the actual ownership of the properties of said corporation for their own use and benefit, or for the use and benefit of some of them, to the complete loss to petitioner and other stockholders,—who may be similarly situated,—of the value of the stock of said corporation owned by her and them." That pursuant to the said conspiracy by threatening receivership proceedings against said corporation upon the pretended debt "which would have destroyed its credit and operation as a going concern and seriously deteriorated its property and assets, said defendants forced and coerced the delivery to them or to a person or persons for them, the resignation of the officers and directors of the defendant corporation of certain stock of the said defendant corporation, without warrant in law or legal right, and assumed and seized the affairs of said defendant corporation, and purporting to act as officers and directors of said corporation, unlawfully and illegally usurped the offices, functions and duties of the regularly constituted officers and directors of said corporation, all of which occurred within the month of January, 1926, the exact date being unknown to petitioner." That Mendelsohn assumed to act as president of defendant corporation, and that Young, Jordan, and Biedenharn assumed to act as directors, without legal right and without having been properly elected thereto, all in pursuance of said conspiracy. That petitioner is informed and believes that the said individuals pretended to act in the capacities aforesaid by virtue of a contract executed between certain stockholders and directors of said Dry Goods Company, on the one part, and the defendant bank, represented by the said Querbes as president and Jordan, Young, and Biedenharn as directors and officers, upon the other part, entered into in the month of January, 1926, the exact date being unknown to petitioner, under the terms of which the then officers and directors of the Dry Goods Company should vacate their respective offices and surrender same to the defendants hereinabove named, which contract was for the declared purpose of obtaining to the defendant bank immediate payment of a certain alleged indebtedness claimed to be due it by the Dry Goods Company, which contract was entered into under coercion and on the threat of receivership proceedings of defendant corporation, which contract "was to extend for a period of one year and then terminate unless further extended." That said contract was extended for one year "but which extended period was not further extended or

continued in force and effect as between the parties thereto."

Further, that pursuant to said conspiracy the then officers and directors of the Dry Goods Company, "in dereliction of their duty as such, without the consent and knowledge of petitioners and other stockholders, and without warrant in law, surrendered the administration, control and management of the property, assets and affairs of said defendant corporation" to the said Mendelsohn, Young, Jordan, and Biedenharn, the said Mendelsohn assuming to act as president and the other three as directors, who took charge of the property, assets, and management of the business affairs of the said Dry Goods Company. Further, that under the provisions of said contract between the bank and certain stockholders of the Dry Goods Company, as extended in writing, as above set forth, "whatever alleged rights claimed to have been secured to the defendants herein by virtue of said contract completely and entirely ceased and terminated, and under the provisions of said contract, the stock held by William L. Young as trustee, should have been returned to parties from whom he received it and the control, management and operation of said business by the officers and directors named should have terminated, but even without the semblance of the alleged right or authority vested in the said defendants by virtue of said contract, said defendants continued to illegally and wrongfully usurp said offices of said corporation, without any legal warrant or authority whatever, said defendants continued in control, possession and management of the affairs of said corporation, and on or about December 24th 1928, the said David Mendelsohn, Wm. L. Young, J. Homer Jordan and Ollie L. Biedenharn, without the knowledge or consent of plaintiff, transferred the control and conduct of said corporation to the defendant Querbes, who now claims to be in sole control,—pursuant to the foregoing,—of the said business. That on or about the same time the defendant circulated and caused to be circulated a report to the trade in general, and the business community of Shreveport and customers of said corporation, that the business of said corporation was being liquidated and the firm of Florsheim Bros. Dry Goods Company Ltd. was going out of business, and among other things, did then discharge all of the traveling salesmen, who had been theretofore employed by said corporation, refused to permit anyone on behalf of said corporation to operate the affairs of the corporation, to purchase merchandise for its regular

transaction of business, and further caused removal of the business of said corporation from part of the premises it had occupied for a period of upward of thirty years." That petitioner is informed and believes, and therefore alleges, that some time during the months of November and December, 1928, the exact date being unknown to her, "a formal demand was made on the defendants herein for return of stock held by them, and Wm. L. Young as trustee, under the terms of the contract heretofore referred to, but which defendants refused to do." That all of the acts and conduct above set forth were and are to the prejudice and damage of the rights of petitioner and other similarly situated as stockholders of said corporation. That "during the period of about January, 1926," Mendelsohn, Young, Jordan, Biedenharn, and Querbes, pursuant to said conspiracy, misappropriated and paid out of the funds of the corporation to said bank about $23,-000, as alleged interest on an alleged debt claimed to be owing to said bank, which was not in law or in fact a valid obligation of the defendant corporation 'to the knowledge of said defendants. That the said individuals also, during the same period, misappropriated and paid to said Mendelsohn the further sum of $18,500, out of the funds of the corporation. That they also misappropriated and paid the sum of $1,100 for alleged legal services, when in truth and fact no such services were rendered. That at various times since the said Mendelsohn, Young, Jordan, and Biedenharn placed said Querbes in control, there had been deposited to the credit of said corporation sums of money which were misappropriated and unlawfully paid to the said bank in the sum of $110,000, no part of which was due the bank, or constituted a valid obligation to it, and was without consideration, all of which facts were well known to defendants. "That defendants are now continuing their unlawful acts in pursuance of said conspiracy." That the said Querbes, Mendelsohn, Young, Jordan, and Biedenharn connived, schemed, and conspired to "wreck the said corporation, ruin its credit and standing in the community, and by depleting its treasury, misappropriating its funds and wrongfully and unlawfully paying out the same from the said 22nd day of January, 1926, with the intent and purpose of making it impossible for the said corporation to meet its legal obligations at maturity, rendering the holdings of its various stockholders of no value by discontinuance of its business and disorganization of its working force, with the result that said corporation and its stockholders, were damaged in actual losses of profits which it would have earned during said period of more than $75,000, and a loss of business as a result thereof, until a reorganization can be effected and re-established as a going concern, of an additional sum of at least $50,000, and the loss of its credit in financial circles necessary to it and its business and its good name, fame and reputation by an additional sum of $100,000."

Petitioner further alleges:

"Petitioner respectfully represents that the interest of all but one of those who recently assumed to act as officers and directors of the corporation, is adverse to that of the corporation and the stockholders thereof, said officers and directors in truth and fact not representing said interest of the stockholders and directors of said corporation, but representing the interest of the said defendant, First National Bank of Shreveport, Louisiana, and therefore demand or request of them to institute suit on behalf of the corporation for the reparation of the wrongs hereinabove alleged would be useless, such action being against themselves as well as others connected with them."

Further, that all of the above acts were done in pursuance of said conspiracy, not in the interest of the corporation, and to subserve outside purposes in a manner inconsistent with its corporate interest and that of its stockholders; that as above set forth, the defendant bank had unlawfully received out of the funds of the defendant corporation sums in excess of $133,000, all of which should be returned and paid over by it to the said Dry Goods Company for the use and benefit of petitioners and other stockholders similarly situated; that Mendelsohn should also be required to return to the assets of the corporation the said sum of $18,500 unlawfully received by him, as aforesaid.

Petitioner prayed for service upon all of the defendants and for judgment "in favor of petitioner in her own behalf and for the use and benefit of all other stockholders of said defendant, Florsheim Bros. Dry Goods Company, Ltd. similarly situated, against all and each of the defendants hereinabove named, in solido in the sum of $377,000, and such additional sums as the court may find on hearing hereof were wrongfully and illegally taken from the funds of said corporation and diverted from the proper corporate purposes; and for further judgment against the bank in the sum of $133,000, * * * for interest and principal on the pretended debt" of the Florsheim Bros. Dry Goods Company,

Limited, to said bank as alleged, also for the sum of $18,500 against Mendelsohn, with interest on all of said sums from the date they were received by the said defendants. She finally prayed for all other orders and decrees necessary, for costs, for general and equitable relief.

This petition was filed and docketed on the law side of the court on March 14, 1929. On March 21st, the bank and individual defendants filed a demurrer or motion to dismiss on the ground that the petition does not show a right of action in petitioner or state a cause of action in her against any of the defendants. On June 14th an amended and supplemental petition was filed, as was also a petition of intervention on behalf of Mrs. Bertha B. Florsheim, as natural tutrix of the minor, Seymour Florsheim, under appointment of the district court of Caddo parish, La., claiming to own 15 shares of the capital stock of the defendant corporation of the alleged value of $7,500. Intervener made charges similar to those of plaintiff but in more condensed form, called attention to the demurrer previously filed, and prayed for judgment as "under the original and amended bill of complaint. * * * In the event the court permits the filing of this petition of intervention, that the above and foregoing be taken and considered as petitioner's bill of intervention, and that petitioner be considered a party to this suit, in the same manner and in like effect as if she had been named in the original bill as a party plaintiff."

The demurrer to the original petition was argued and submitted on the same day of the filing of the first amended petition and intervention, to wit, June 14th, and on the day following, plaintiff filed a second amended petition, praying to be permitted to reform article III of said bill of complaint to read as follows: "Petitioner represents that she is now, and was at the time of the transactions of which she complains herein, the owner, in her separate and paraphernal right, of more than twenty (20) shares of the capital stock of the defendant corporation, Florsheim Bros. Dry Goods Company, Ltd., of Shreveport, Louisiana, which stock owned by her has a par and actual value in excess of Ten Thousand ($10,000.00) Dollars; and that this suit is not a collusive one to confer on a court of the United States jurisdiction of a case of which it would not otherwise have cognizance."

And also amending article XIX of her original bill of complaint to read as follows: "That defendants are now continuing their unlawful acts in pursuance of said conspiracy, and are now pretending to act as the officers and members of the Board of Directors of Florsheim Brothers Dry Goods Company, Ltd., and are now in control of its business and affairs."

Objection was urged to the allowance of the amended petitions and the demurrer submitted on briefs. Briefs of defendants on the demurrer were filed on the day this objection was made and 15 days allowed from June 21st to submit briefs in support of their objections, but up to this time, July 31st, none have been filed. The first amended petition consists of a reformation of article XXI, to read as follows:

"Petitioner represents that the interest of all but one of those who recently assumed, and now assume, to act as officers and directors of the corporation, is adverse to that of the corporation and the stockholders, said officers and directors in truth and in fact not representing said interest of the corporation and stockholders, but representing the interest of said defendants and the First National Bank of Shreveport, Louisiana, and therefore a demand or request of them to institute suit on behalf of the corporation for the reparation of the wrongs herein alleged would be useless, such action being against themselves and others connected with them; and petitioner further alleges that, the defendant, W. L. Young, pretending to act as Trustee, had the legal title on the books of the corporation and the possession and control of 151 shares of the capital stock of the corporation from about January 22nd, 1926 to the time of the filing of this suit, and that the defendants, O. L. Biedenharn, J. E. Jordan, Wm. L. Young and Dave Mendelsohn each had the legal title on the books of said corporation, and the actual possession and control of one (1) share each of the capital stock of said corporation from January 22nd, 1926, to the time of the filing of this suit, and that the corporation had an authorized capital stock of three hundred (300) shares; and therefore the defendants had the legal title on the books of the corporation and were in possession and control of more than a majority of the stock of said corporation, and it would have been useless for plaintiff to appeal to the stockholders as a body to institute this proceeding because the defendants, having the legal title on the books of the corporation and possession and control of more than a majority of the stock of the corporation, would control any action of a stockholders' meeting."

In the prayer of this amendment plaintiff asks for "judgment in favor of petitioner and all other stockholders similarly situated, *for the use and benefit of Florsheim Bros. Dry Goods Company, Ltd.*, against all and each of the defendants hereinabove named, in solido, in the sum of $377,600, and any such additional sum or sums as the court may find on the hearing hereof were wrongfully and illegally taken from the funds of Florsheim Bros. Dry Goods Company, Ltd., and diverted from proper corporate sources." Further, that there be "judgment rendered in this case in accordance with the prayer of her original bill herein filed, as hereinabove amended, and for general and equitable relief."

██ I can see no sound objection to the allowance of the amended petitions at this stage of the case. Simkins, Fed. Practice, p. 58. It is true that in the original she prayed for judgment in favor of herself and such other stockholders as might be similarly situated, while in the amendment last above referred to she asks that it be for the "use and benefit" of the Dry Goods Company. I think the petition should be construed as a whole, taking into consideration its purposes and the nature of the relief sought. Of course, plaintiff, neither as an individual, nor for herself and others, could obtain a judgment in her own favor for any sum which she could collect as such, but whatever relief might be given would be for the benefit of the corporation and would inure indirectly to the stockholders.

██ It is hardly necessary to cite authority to the point that such a suit as this cannot be maintained as an action at law, but must be brought in equity. 14 C. J. p. 938, verbo "Corporations," § 1457, and authorities in foot notes. There was no such right at common law, but the courts of equity at an early date evolved a form of relief, in extreme cases, the principles of which will be discussed further on in this opinion. For the present, it is sufficient to say that, if the petition discloses a proper case for equitable relief, the court may order it transferred upon such reformation as to form, etc., as may be deemed necessary. Judicial Code, § 274a (28 USCA § 397).

In the case of Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, the Supreme Court of the United States took occasion to review the jurisprudence of this country and of England, and from which it announced certain tests to determine whether a stockholder should be allowed to sue in his own name on behalf of the corporation for a vindication of its rights against either its own officers or third persons. I quote from page 460 some of the conditions which it declared should exist to give a stockholder a standing to sue in equity, as follows:

"We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit—

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;

"Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

"Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

"Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases.

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he

complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts, should be stated with particularity, and an allegation that complainant was a shareholder at the time of 'the transactions of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit."

This case has been followed by numerous others, both in the Supreme Court and other federal courts, as well as those of the states, a list of which will be found in Rose's Notes, Revised Edition, beginning on page 573 of volume XI.

■ It remains to analyze the allegations of the petition in this case to see if it meets the requirements of law as laid down in the jurisprudence as necessary to bring it within the exceptional class entitling a stockholder to sue in place of the corporation.

The sum and substance of the charges as above set forth are that beginning some time in 1925, certain of the defendants herein formed a conspiracy to get control of the capital stock, property, and assets of the corporation for the purpose of collecting for the defendant bank an alleged indebtedness, which petitioner charges the Dry Goods Company did not owe, and in doing so, through coercion and threats of a receivership, forced a transfer of a majority in amount of its capital stock to the defendants or some of them, the retirement of its officers and directors, and the substitution in their place and stead of some of the individual defendants, who have proceeded to misappropriate its property and assets in the manner above indicated; that the said defendants are still in control, both of the stock, through an alleged trustee, and the offices through some of the defendants who are now claiming to be directors and officers of the corporation. Therefore, if this be true, then any suit to redress the wrongs complained of in the other allegations of the petition, which are numerous and serious, would have to be brought against these same individuals and the bank, of which they are also officers and directors. And it is perfectly obvious from these alleged facts that it would be worse

than useless to demand of them any action on behalf of the Dry Goods Company. Of course, the law does not require one to do a vain and useless thing, and from the allegations of the petition it is apparent that it would be a vain thing for the petitioner to call upon these defendants to bring suits against themselves and the bank, of which they are officers.

My opinion is that the plaintiff states a case which brings it within the excepted class entitling her to invoke the equity powers of the court for relief.

Petitioner will therefore be required to reform her pleadings so as to conform to the equity practice, and upon doing so this case will be transferred to the equity side of this court, to be disposed of according to law.