STEINWAY et al.

v.

GRIFFITH CONSOLIDATED THEATRES, Inc., et al.

No. 35630.

Supreme Court of Oklahoma.

May 18, 1954.

Rehearing Denied July 28, 1954.

Application for Leave to File Second Petition for Rehearing Denied Sept. 14, 1954.

McNeill & McNeill, Spillers & Spillers, Tulsa, for plaintiffs in error.

Richardson, Cochran, Dudley, Fowler & Rucks, R. D. Hudson, Tulsa, and Wayne W. Bayless, Oklahoma City, for defendants in error.

DAVISON, Justice.

This case comes here by appeal from a judgment rendered by the trial court without the intervention of a jury. The sole question for determination here is whether or not the court was in error in denying plaintiffs the right to a jury trial. The suit was instituted by Mary Kathryn Castle Steinway, her mother, Kathleen L. Dieffenbach, and her maternal grandmother, Julia LeBus, as minority stockholders in the corporation, Majestic Amusement Company, as plaintiffs, against the defendants, Griffith Metropolitan Theatres, Inc., Henry S. Griffing, Lois McColgin and C. R. Guthrie, as Trustees of Delman Theatre, Inc., a dissolved corporation, Ralph Talbot Theatres, Inc., Hotel Last Frontier, Inc., Ralph Talbot, H. J. Griffith and Henry S. Griffing. In order to make the beneficial

corporation, Majestic Amusement Company, a party to the suit, it was joined as an additional party defendant. The relief sought was set out in the prayer to plaintiffs' petition, as follows:

"Wherefore, plaintiffs upon their Amended Petition as minority stockholders and for the use and benefit of the said 'Majestic' corporation, pray as follows:

"The plaintiffs pray judgment against the defendants and each of them, except the said 'Majestic' and 'Ritz' corporations for actual damages in the sum of $2,100,000 and exemplary damages in the sum of $500,000 and for such other and further relief as plaintiffs may be entitled to recover under the facts alleged and established, and for all costs herein."

The record in the case is voluminous, containing some 3,000 pages. The testimony was in conflict on some of the facts, but the findings of the trial court thereon were extensive and outline all items of importance. Although lengthy, those findings constitute about as condensed a statement of the relevant facts as can be made. They are as follows:

"1.

"Talbot came to Tulsa in 1910 and immediately became connected with the theatre business in said city. In 1913, he entered into a business arrangement with R. W. Castle and Harry Castle (father and son) by which he acquired a one-fourth interest in the Palace Theatre operating in Tulsa, which business arrangement between the two Castles and Talbot continued until December 1919.

"2.

"In 1918, Talbot and the Castles purchased stock in Majestic, which at the time owned and was operating Majestic Theatre, a downtown show house in Tulsa and Talbot became manager of this theatre. Prior to this purchase of stock in Majestic, Talbot's name had been used from 1910 to 1918 in adver-

tising the various theatres with which he had been connected in Tulsa.

## "3.

"Ritz was organized as a corporation in 1925. Harry Castle and Talbot each owned 650 shares of its stock. A 99-year lease was obtained by Ritz upon a portion of the Ritz building and the real estate upon which said building was located, and on May 11, 1926, Ritz opened the Ritz Theatre, a downtown show house for business.

## "4.

"Plaintiff Kathleen L. Dieffenbach was formerly the wife of Harry Castle, who died in 1928. At his death, his stock in both Majestic and Ritz was inherited by said plaintiff, his wife, and his daughter, Mary Kathryn Castle Steinway. Except for one share of stock in each Majestic and Ritz which was transferred by her to Nevin J. Dieffenbach whom she married in 1929, and of which transferred shares she has at all times been the beneficial owner, the record ownership of the stock in both Majestic and Ritz owned by Harry Castle at the time of his death remained in plaintiff Kathleen L. Dieffenbach until 1946, when she transferred 3750 shares of Majestic and 198 shares of Ritz to each of the other plaintiffs, Mary Kathryn Castle Steinway, her daughter, and Julia LeBus, her mother, and the three plaintiffs are now minority stockholders in both Majestic and Ritz.

## "5.

"In 1929, Ritz acquired the Rialto Theatre and Majestic acquired the Orpheum, both the new acquisitions being downtown show houses. At all the times mentioned in the evidence, the Majestic, Ritz and Rialto Theatres have been operated as first-run picture show houses. At the time of its acquisition by Majestic, the Orpheum was being operated as a vaudeville theatre, but in 1931 it also came to be operated as a first-run picture theatre, and has ever since been so operated.

## "6.

"From the times Majestic and Ritz began to operate the above mentioned four downtown theatres, they have had no competition by any theatre owned or controlled by any producer or distributor of film (The City of Tulsa was unique in being the only city in the United States of comparable size where there was no such competition among the downtown, de luxe, metropolitan picture theatres. The absence of such competition to the Majestic, Ritz, Rialto and Orpheum Theatres was the result of business policies adopted and carried on by Talbot as President of both Majestic and Ritz, and such policies have been beneficial to the stockholders of both said corporations.

## "7.

"Plaintiff Kathleen L. Dieffenbach, during the years 1937 and 1938 was a member of the Board of Directors of both Majestic and Ritz. Talbot was at all the times material to the determination of this case, President of both Majestic and Ritz.

## "8.

"In 1937, I. B. Adelman began the construction of a theatre building in Tulsa near the intersection of Fifteenth Street and Lewis Avenue. Talbot learned that it might be possible for him to acquire an interest in this theatre, hereinafter referred to as the Delman Theatre.

## "9.

"Talbot gave no consideration to the question of either Majestic or Ritz acquiring any interest in the Delman Theatre, because at the time he, in good faith, believed that neither Majestic nor Ritz should become interested in subsequent run outlying theatres as such connection was contrary to the business policies theretofore pursued by Majestic and Ritz, and would likely invite competition in the downtown first-run field from other theatrical interests.

**"10.**

"Talbot did, however, early in 1938, advise plaintiff Kathleen L. Dieffenbach of his opportunity to procure an interest in the Delman Theatre and discussed with her the policy theretofore pursued by Majestic and Ritz of said corporations to not become interested in subsequent-run theatres. He then asked said plaintiff if she wished to become personally interested with him in acquiring an interest in the Delman Theatre, and she at said time declined such offer.

"(Number 11 was omitted by the trial court.)

**"12.**

"Talbot at no time intended to become interested in the actual operation of the Delman Theatre, and never did at any time have anything to do with its actual operation. The opportunity offered by Adelman for Talbot to become interested in the Delman Theatre came to Talbot personally and not by reason of his position as an officer in Majestic and Ritz.

**"13.**

"Talbot organized defendant Delman as a corporation about March 4, 1938, and while his name did not appear as an organizer he was at all times the beneficial owner of its stock. Talbot in good faith believed that it was not for the best interest of Majestic and Ritz to have his connection with the Delman Theatre made public for the reasons (a) It might cause distributors or producers of film to engage in competition with the first-run downtown theatres of Majestic and Ritz, and (b) that if labor troubles developed in the Delman Theatre operation same would not spread to the theatres of Majestic and Ritz. The policy of Talbot to keep from public knowledge his interest in the Delman Corporation and the Delman Theatre was for the best interest of Majestic and Ritz and the stockholders of said defendants.

**"14.**

"On March 4, 1938, I. B. Adelman executed a written lease of the Delman Theatre to the defendant Delman, and on March 7, Delman entered into an agreement with Southwestern Theatres, Inc., (a corporation owned and controlled by P. R. Isley and W. P. Moran) whereby said last named corporation would operate the Delman Theatre, and it was so operated for a period of two years.

**"15.**

"At the time of said operating agreement above mentioned, the Southwestern Theatres, Inc., was operating in Tulsa several other theatres, all of which were operated as subsequent-run picture show houses, and none of them licensed or exhibited any first-run pictures, and this method of operation of its theatres, including the Delman Theatre, was continued by the Southwestern Theatres, Inc., and said theatres, including the Delman were never at any time in direct or substantial competition with the first-run downtown theatres of Majestic and Ritz.

**"16.**

"About March 23, 1940, Griffith Southwestern Theatres, Inc., purchased various interests of Southwestern Theatres, Inc. (the Isley and Moran corporation) including the operating interest of the latter in the Delman Theatre and other theatres in Tulsa, and continued the operation of all of same, including the Delman Theatre, as subsequent-run picture show houses. These theatres so operated by the Griffith Southwestern Theatres, Inc., in Tulsa, therefore, were never at any time in direct or substantial competition with the first-run downtown theatres of Majestic and Ritz.

**"17.**

"Defendant Delman entered into various other transactions after 1938 by which it acquired interests in other outlying subsequent-run theatres and

also in certain real estate. In none of these transactions was any of the resources of either Majestic or Ritz used or invested and none of the additional theatres in which Delman acquired an interest were ever at any time operated other than as subsequent-run outlying theatres and were never at any time in direct or substantial competition with the first-run downtown theatres of Majestic and Ritz.

"18.

"Talbot never, at any time, took any part in the management or operation of any of the subsequent-run outlying theatres in which he or the defendant Delman were investors. Talbot never at any time, was engaged in any theatrical enterprise in competition with the theatres of Majestic and Ritz.

"19.

"From the time of their marriage in 1929 to the latter part of 1944, or early part of 1945, Nevin J. Dieffenbach did not know the amount of stock ownership of his wife, Kathleen L. Dieffenbach, in Majestic or Ritz or the income she had received therefrom.

"20.

"Sometime in the year 1944, plaintiff Kathleen L. Dieffenbach entered into negotiations with Talbot for the purchase by him of her stock, but no purchase was made by Talbot. In these negotiations Talbot at all times acted in good faith.

"21.

"Sometime in the year 1945, plaintiff Kathleen L. Dieffenbach turned over to her husband, Nevin J. Dieffenbach, the matter of her business in connection with Majestic and Ritz, and on December 20, 1945, resigned her position as director of the two corporations and requested the election of her said husband as a director of both of said corporations, and he was elected as such director of both.

"22.

"Funds had been accumulating in the treasuries of Majestic and Ritz for the intended purchase of a suitable site for another downtown first-run theatre, although efforts had been made to acquire such site, an available one had not been located and by proper action of the Board of Directors of Majestic and Ritz, as shown by plaintiffs' exhibits 22 and 23, dividends were declared by said corporations and Nevin J. Dieffenbach as a director voted for the declaration of such dividends.

"23.

"After Nevin J. Dieffenbach had been elected a director of Majestic and Ritz during the directors' meetings and before and after such meetings he frequently criticized the management of the corporations and adopted a course of harassment toward Talbot, and this created an antagonism between the two men. In the fall of 1946, the said Dieffenbach stated to Talbot that he had visited several cities of the eastern United States and interviewed numerous theatre operators and film executors, and that he considered he had a sufficient course in theatre management and intended to move into the management of Majestic and Ritz. As a result of this statement of Dieffenbach, Talbot decided to sell his stock in Majestic and Ritz. Prior thereto, the evidence discloses that Talbot and Dieffenbach had some negotiations for the sale of the stock held by Kathleen L. Dieffenbach to Talbot or the sale of Talbot's stock to the Dieffenbachs. Thereafter, Talbot contacted Henry Griffing at Oklahoma City in an attempt to sell his stock to defendant Griffith Consolidated. In the negotiations following Talbot sold his stock in Majestic and Ritz to Griffith Consolidated December 27, 1946. Nevin J. Dieffenbach, as agent of his wife, was offered the same amount per share for the stock of plaintiffs in Majestic and Ritz as was paid Talbot for his stock, but the offer was declined.

"24.

"Griffith Southwestern Theatres, Inc. was merged with defendant, Griffith Consolidated, August 26, 1945, and

from that time until November 1947, defendant Griffith Consolidated operated the Delman Theatre and various other theatres in Tulsa, but said theatres were not operated in a manner to be in direct or substantial competition with the theatres of Majestic and Ritz, as none of them were operated as first-run picture show houses.

"25.

"On November 26, 1947, defendant Griffith Consolidated conveyed its interest in subsequent-run theatres in Tulsa to defendant Griffith Metropolitan, which has operated since said time various subsequent-run theatres in Tulsa, but such theatres have not been at any time operated in direct or substantial competition with the theatres of Majestic and Ritz as none of them have been operated as first-run picture show houses.

"26.

"The administration contracts of January 13, 1947 and May 4, 1948 between Majestic and Ritz and defendant Ralph Talbot Theatres, Inc. were beneficial to Majestic and Ritz and neither of said corporations nor their stockholders sustained any injury or detriment by reason of said contracts.

"27.

"About July 1947, defendant Griffith Consolidated was operating the Tower Theatre in Tulsa as a subsequent-run theatre, and at said time changed the policy of said theatre to what is known in the motion picture industry as an 'Art' Theatre and did play first-run foreign made pictures, mostly foreign language pictures, but this theatre licensed no pictures for exhibition which were desirable for playing in either of the theatres of Majestic and Ritz, or which a prudent operator of those theatres could have desired for exhibition. No pictures were ever diverted from any theatre of Majestic and Ritz to the Tower Theatre or any other theatre operated in Tulsa by defendant Griffith Consolidated, or by any other defend-

ant, or to any theatre in which any of the defendants ever had any interest.

"28.

"Talbot by lending his name in advertising the business of Majestic and Ritz benefited said corporations, and the use of his name was done in good faith. The use of the name Ralph Talbot Theatres, Inc., in connection with the performance of the administration contracts complained of was for the best interest of Majestic and Ritz.

"29.

"None of the defendants at any time conspired among themselves or with any one else to injure, wrong or damage Majestic or Ritz, or the minority stockholders of either of said corporations.

"30.

"Plaintiffs have introduced no evi- to establish any cause of action against the defendants, or either of them."

The trial court also made written conclusions of law and, based thereon, rendered judgment for defendants. From that judgment, the plaintiffs have perfected this appeal. Before the trial of the case was commenced, plaintiffs demanded that they be granted "a trial by jury of all questions of fact, and of the amount of recovery." That demand or motion was denied. Plaintiffs have perfected this appeal from the judgment. Only two propositions are here presented. The first is alleged error of the trial court in denying a trial by jury. The second is alleged error in sustaining the demurrer of the defendant, Hotel Last Frontier, to the evidence of plaintiff. However, unless the judgment in favor of the other defendants is reversed, there can be no judgment against Hotel Last Frontier. Therefore, the primary question for determination is the right to a jury trial.

■ The specific question here has not, heretofore, been before this court, but it is an established rule in this jurisdiction that "In an equity cause a party is not entitled, as a matter of right, to a trial by jury." McAleer v. Dawson, 119 Okl.

273, 248 P. 615 (many earlier cases to the same effect are therein cited). One of the more recent applications of the rule was in the case of Russell v. Freeman, 202 Okl. 421, 214 P.2d 443. That the rule is not in conflict with 12 O.S.1951 § 10, to the effect that distinctions between actions at law and suits in equity were abolished, nor in conflict with 12 O.S.1951 § 556, to the effect that issues of fact in certain actions shall be tried to a jury, nor in conflict with Art. II, § 19, of the Oklahoma Constitution guarantying the right of trial by jury, was definitely determined by this court in the early case of Mathews v. Sniggs, 75 Okl. 108, 182 P. 703, wherein it was said:

"While section 4650, Rev.Laws 1910, abolishes the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, the essential and inherent principles of legal and equitable rights and legal and equitable remedies remain as before; the Code provision not being intended to produce any alteration of, nor direct effort upon, the primary rights, duties, and liabilities of persons created or recognized either in law or equity.

"The right of trial by jury, declared inviolate by section 19, art. 2, Const., except as modified in the Constitution itself, means the right as it existed in the territory at the time of the adoption of the Constitution.

"The constitutional guaranty that 'the right of trial by jury shall be and remain inviolate' has no reference to the trial of issues of fact in equity cases."

Into which category then, legal or equitable, does the case at bar fall? The plaintiffs can recover nothing for themselves. No wrong has been done them directly, even though the evidence sustains every allegation in the petition. The wrong, if any, was to the corporation of which they were minority stockholders. The corporation as a separate entity is the only party having a direct beneficial interest in any judgment rendered. A clear and concise explanation of the situation is found in the case of Koral v. Savory, Inc., 276 N.Y. 215, 11 N.E.2d 883, 885, wherein the following statement is made:

"The right of a stockholder of a corporation to bring suit to enforce, for the benefit of the corporation, a cause of action, which belongs to the corporation, is purely equitable. The equity suit, when permitted, is in effect a combination of two causes of action which the stockholder asserts: 'namely, one against his own company, of which he is a corporator, for refusing to do what he has requested them to do; and the other against the party which contests the matter in controversy with that corporation.' Hawes v. City of Oakland, 104 U.S. 450, 452, 26 L.Ed. 827. * * *

" 'Courts of equity will, at the suit of a stockholder, interpose their powers to remedy or prevent a wrong to a corporation by its officers or directors when the corporation, because it is controlled by the wrongdoers or for other reason, fails and refuses to take appropriate action for its own protection.' Isaac v. Marcus, 258 N.Y. 257, 264, 179 N.E. 487, 489. Suits against directors for breach of trust or other similar wrong constitute a well-recognized category of cases in which the extraordinary powers of a court of equity are properly invoked because the corporation is controlled by the alleged wrongdoers. * * *"

In the case of Checotah Hardware Co. v. Hensley, 42 Okl. 260, 141 P. 422, this court followed that line of reasoning although not making the direct statement that the case was one recognizable in equity only. The Idaho Court, in the case of Morton v. Morton Realty Co., 41 Idaho 729, 241 P. 1014, was squarely confronted with the question of the right to trial by jury in a suit by a stockholder to enjoin the directors from doing an unlawful act. It was held that "The remedy of such stockholder is in equity, and therefore the parties are not entitled as a matter of right to a jury trial."

Many of the rules of law applying to such a situation as is alleged in the petition here-

in are collected, together with supporting citations, in the case of Liken v. Shaffer, D.C.N.D.Iowa, 64 F.Supp. 432, 441. It was pointed out therein that:

"A stockholder's derivative suit is an invention of the courts of equity and is recognizable only in equity and cannot be maintained at law. Felsenheld v. Bloch Bros. Tobacco Co., 1937, 119 W.Va. 167, 192 S.E. 545, 123 A.L.R. 334, 339; Callanan v. Powers, 1910, 199 N.Y. 268, 92 N.E. 747; Roberts v. Kennedy, 1922, 13 Del.Ch. 133, 116 A. 253; Harris v. Pearsall, 1921, 116 Misc. 366, 190 N.Y.S. 61; Jacobs v. First National Bank, D.C.La.1929, 35 F.2d 227, 231; Pomeroy, Equity Jurisprudence, 3d Ed., sec. 1985. Even if the claim, if sued directly by the corporation, would be an action at law, yet, if enforced by means of a stockholder's derivative suit, it is prosecuted by an action in equity. Rettinger v. Pierpont 1944, [145] Neb. [161], 15 N.W.2d 393, 397. * * *"

A case presenting the identical question which is now before us was presented in the case of Neff v. Barber, 165 Wis. 503, 162 N.W. 667. It was there held that, although the recovery sought was a money judgment for damages resulting from conspiracy of the managing officers of the corporation, nevertheless the suit was one in equity to which the right to trial by jury did not extend.

The cause of action set out in plaintiffs' petition herein, although for the recovery of a money judgment are for the use and benefit of the corporation, of which the plaintiffs are only stockholders. Their suit and their right to maintain it are recognizable only in equity. Therefore, they were not entitled, as a matter of right, to a trial by jury. The trial court was correct in so holding.

The judgment is, in all things, affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.