2007 OK CIV APP 118

**Julie BEARD, Plaintiff/Appellant,**

**v.**

**Barry LOVE and 77 Corporation,
an Oklahoma Corporation,
Defendants/Appellees.**

No. 103,721.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Aug. 28, 2007.

Certiorari Denied Nov. 13, 2007.

Robert S. Glass, R. Charles Wilkin, Brian L. Mitchell, Glass Law Firm, Tulsa, OK, and C. Bart Fite, Wright, Stout, Fite & Wilburn, PLLC, Muskogee, OK, for Plaintiff/Appellant.

R. Forney Sandlin, Muskogee, OK, for Defendants/Appellees.

JOHN F. FISCHER, Presiding Judge.

¶1 Appellant Julie Beard appeals from the Trial Court's August 8, 2006, grant of summary judgment against her and in favor of Appellees 77 Corporation and Barry Love. This appeal is assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp.2002, ch. 15, app. 1.

## BACKGROUND FACTS

¶2 K.C. Love, Sr., grandfather of siblings Beard and Love, incorporated 77 Corporation on March 30, 1977. Its principal asset is real property and a building located in Muskogee, Oklahoma. In 1987, Beard purchased her current 48% ownership of the corporation's stock from her grandfather for $12,000. Love, as majority shareholder of the corporation, owns the other 52% of the corporation's stock. How or when he acquired his stock is not apparent from the record. The corporation's records indicate that Beard was president and a director of the corporation from December 1, 1987 until July 23, 1991, and that Love replaced her as president and was a director throughout the time relevant to this case.

¶ 3 Beard asserts that she was generally unaware of her official position with the company, however, and that any position she held was not substantive because Love controlled the management and actions of the corporation and that, after her removal from office in 1991, she was not welcome at the company offices, was excluded from company decisions and was denied information regarding operations of the company to which she was entitled as a shareholder. The record reflects a long and contentious relationship between Beard and Love, at least from 1991.

¶ 4 On July 15, 2002, Beard filed a verified petition generally asserting that Love had breached his fiduciary duty to manage 77 Corporation for the benefit of all shareholders. She complained that as the company's controlling officer, director and shareholder, Love had refused to declare dividends and operated the company for his personal benefit. Beard specifically alleged that Love: (1) failed to renegotiate or repay a promissory note that the corporation owed to Love Bottling, Inc., a company now wholly owned by Love; (2) failed to renegotiate Love Bottling's lease with the corporation based on market rental rates; (3) authorized the corporation to pay expenses related to the leased property that should have been paid by Love Bottling pursuant to the terms of the lease; (4) failed to declare dividends for the corporation despite excessive retained earnings; and (5) failed to restructure the corporation's tax structure to the detriment of the corporation.

¶ 5 On June 27, 2006, with leave of court, Beard filed an amended petition which incorporated her original petition and further alleged that Love had breached his fiduciary duty to 77 Corporation and Beard in the following manner: (6) Love caused the corporation to pay the ad valorem taxes of third parties; (7) Love had made personal loans to himself from corporate funds; (8) despite provisions in the lease to the contrary, Love had sublet a portion of the leased premises to Love Beverages, L.L.C., a company wholly owned by Love; and (9) Love had failed to provide Beard information regarding the operations of 77 Corporation, which she had requested and was entitled to receive. Beard's amended petition sought, in the alternative, dissolution of the corporation, the forced purchase of Beard's minority interest by Love, and a money judgment against Love and in favor of 77 Corporation to recover the damages resulting from Love's alleged breach of his fiduciary duty as an officer, director and majority shareholder of the corporation.[1]

¶ 6 Love and the corporation filed a motion for summary judgment attacking Beard's original petition and renewed that motion in response to Beard's amended petition. These motions argue that Beard lacked standing to bring claims for individual damages against the corporation in a derivative suit, the Trial Court lacked the authority to order Beard's requested relief of corporate dissolution and forced stock buy-out, and Beard's claims were barred by the statute of limitations. On August 8, 2006, the Trial Court sustained the motions and granted judgment in favor of Love and the corporation, incorporating, by reference, an Amended Court Minute filed on August 1, 2006. Beard appeals.

¶ 7 On September 19, 2006, Beard filed a Motion For Leave To Submit Appellate Briefs. Oklahoma Supreme Court Rule 1.36(g), 12 O.S.2001, ch. 15, app. 1, provides, "Unless otherwise ordered by the appellate court, no briefs will be allowed on review." Motions for leave to submit appellate briefs are deemed denied unless affirmatively granted by this Court. *Id.* Because further briefing is unnecessary, Beard's motion is denied.

### STANDARD OF REVIEW

¶ 8 We review a trial court's grant of summary judgment *de novo*. *Carmichael v.*

---

1. Beard refiled her amended petition on July 19, 2006, to include a verification, the sufficiency of which, standing alone, is questionable but unchallenged by Appellees. Nonetheless, Beard's incorporation of her properly verified original petition would satisfy the verification requirement of 12 O.S.2001 § 2023.1 for stockholder derivative actions. 12 O.S.2001 § 2001 (pleadings "shall be construed to secure the just, speedy, and inexpensive determination of every action").

*Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* We view all evidentiary materials in the light most favorable to the nonmoving party. *Id.*

¶ 9 This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699. The summary process requires that we determine whether the record reveals only undisputed material facts supporting a single inference that favors the movant's motion for summary judgment. *Id.* "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Id.* We will reverse a grant of summary judgment where it appears from the record that material facts concerning issues raised are conflicting or, even if the material facts are undisputed, that reasonable persons in the exercise of fair and impartial judgment might reach different conclusions from those facts. *Buck's Sporting Goods, Inc. of Tulsa v. First Nat'l Bank & Trust Co. of Tulsa*, 1994 OK 14, ¶ 11, 868 P.2d 693, 697–98. Finally, when considering a motion for summary judgment, the inferences to be drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 1990 OK 43, ¶ 14, 792 P.2d 50, 55.

## DISCUSSION

¶ 10 Although the allegations in Beard's petition and amended petition could have been more artfully stated,[2] it is apparent that Beard asserts three claims. She seeks: (1) to recover damages suffered by 77 Corporation as a result of the alleged breach of fiduciary duty, mismanagement and self-dealing of Love as the corporation's president,

director and controlling shareholder; (2) to recover damages personally suffered as a result of Love's breach of fiduciary duty to her as a minority shareholder; and (3) liquidation of 77 Corporation or, in the alternative, that the Court require Love to purchase her interest in the corporation.

¶ 11 The Trial Court's Amended Court Minute granting the Appellees' motions for summary judgment contains a thorough recitation of the material facts and legal positions of the parties. The Trial Court granted judgment, holding that Beard had no personal cause of action by which to recover any damages she suffered as a result of the conduct she alleged. The Trial Court also held that any derivative action she was pursuing on behalf of 77 Corporation was barred by the statute of limitations because all acts about which she complained either did not result in any damage to the corporation or were outside the applicable limitations period. Further, the Trial Court concluded that the statute of limitations was not tolled until Beard discovered the alleged damage because a derivative action is brought on behalf of the corporation and all acts about which Beard complained would have been known to the corporation at the time they occurred even if not discovered by Beard until later. The Trial Court found that it had no authority to dissolve the corporation at the request of a minority shareholder or to require the majority shareholder to purchase the interest of a minority shareholder. The Trial Court also found that some of the conduct about which Beard complained was, in fact, proper or if improper, it did not result in any damage to 77 Corporation. Finally, the Trial Court found that Beard's evidentiary response to Appellees' statement of undisputed material facts failed, in some respects, to satisfy the requirements of Oklahoma District Court Rule 13, 12 O.S. Supp.2002, ch. 2, app. For the following reasons, we find summary disposition of Beard's claims inappropriate on the basis of this record.

**2.** The pleadings to which the Court refers were not drafted by either counsel representing Appel-

lant in this appeal.

### A.  Issues of Material Fact.

¶ 12 The Trial Court criticized Beard's response to Love's summary judgment motion with reason.  Beard's initial response did not separately state and number the facts she claimed were in dispute as required by Rule 13(b).  Beard's response to Love's second motion contained numbered paragraphs and some reference to evidentiary material that Beard claimed raised fact issues.  However, her response did not refer to the paragraph numbers of the facts in Love's motion that she claimed were in dispute.  While not helpful to the Trial Court, Beard's failure to respond in the manner specified by Rule 13 is not necessarily fatal to her position.  *See Hargrave,* 1990 OK 43 at ¶ 15, 792 P.2d at 55 (reversing summary judgment even though the party opposing the motion did not separately number the issues of disputed fact as required by Rule 13.)

¶ 13 In opposition to Love's motions, Beard submitted a verified petition.  A verified petition is not equivalent to mere allegations in a pleading, which are insufficient to avoid summary judgment.  *Roberson v. Jeffrey M. Waltner, M.D., Inc.,* 2005 OK CIV APP 15, ¶ 8, 108 P.3d 567, 569.  In addition, she attached her affidavit and submitted the 77 Corporation/Love Bottling lease and numerous other documents and correspondence, including documentation of her efforts to obtain information regarding the corporation.  These materials are the type of evidentiary material required by Rule 13.  Love submitted additional evidentiary material in support of his motions, which may be relied on by Beard.  Rule 13(b).

¶ 14 Viewing all of the submitted evidentiary materials in the light most favorable to Beard leads to several general conclusions.  First, although the Bylaws of 77 Corporation do not specifically state that it was formed to provide an income stream for its two stockholders, the record supports Beard's assertion that her grandfather formed the corporation for that purpose.  The general statement of corporate purpose in the Bylaws does not preclude Beard's assertion.  At best, Love's interpretation of the Bylaws creates an issue of fact regarding whether the company was intended to be a vehicle for providing income to Beard and Love.

¶ 15 Second, although the Bylaws and Oklahoma law do not prohibit a corporation from making interest-free loans to a director, 18 O.S.2001 § 1029, the interest-free loans to Love and his wholly owned company, in the absence of any similar benefit to Beard, raise at least an inference that Love operated 77 Corporation for his personal benefit.  The statutory authorization on which Love relies exists only where the interest-free loan "may reasonably be expected to benefit the corporation."  *Id.* Love did not produce any evidence regarding the benefit to 77 Corporation from these loans.

¶ 16 Third, although the Bylaws grant the directors "absolute discretion" to declare dividends, that discretion is not unlimited.  The Bylaws authorize the creation of reserves from otherwise distributable surplus or net profits for contingencies, the equalization of dividends, repairs or maintenance or any other purpose "conducive to the interests of the corporation."  Where authorized, the reserves may equal the funds available for dividends. Absent a reason authorized by the Bylaws, however, the directors may not simply refuse to declare a dividend.  Love did not produce evidence justifying the reservation of all funds available for dividend distribution to the shareholders of 77 Corporation throughout the twenty years the corporation has been in existence and under his management.  Love's interpretation of his authority to refuse to declare dividends creates an issue of fact regarding Beard's evidence of the company's purpose to provide her income and the manner in which Love discharged his fiduciary duty in regard to that purpose.

¶ 17 Fourth, the Trial Court found that certain expenses paid or authorized by Love were improperly paid from 77 Corporation funds. Love has recognized as much and refunded those amounts to the corporation.  However, it does not appear that those amounts were repaid with interest.  By definition, these improper expenses did not benefit 77 Corporation and Love has submitted no evidence or argument explaining why the corporation was not entitled to interest on those funds.

¶ 18 With the favorable consideration of the evidence and inferences to which Beard is entitled at the summary judgment stage, these are among the general factual disputes precluding summary judgment and relevant to Beard's claims that Love operated 77 Corporation for his personal benefit and in breach of his fiduciary duty to the corporation and its minority shareholder.

### B. The Stockholder's Derivative Action

¶ 19 The rights of shareholders to redress wrongs against the corporation resulting from the acts or omissions of its officers and directors are derivative. Any action by shareholders to redress those wrongs must be maintained for the benefit of the corporation. *Weston v. Acme Tool Inc.,* 1968 OK 7, ¶ 12, 441 P.2d 959, 962 (citing *Dobry v. Yukon Elec. Co.,* 1955 OK 281, 290 P.2d 135). Pleading requirements for derivative actions are found in the Oklahoma General Corporation Act, 18 O.S.2001 §§ 1001–1144, and the Oklahoma Pleading Code, 12 O.S.2001 §§ 2001–2027. Derivative actions are equitable in nature and cannot be maintained at law even though the action seeks a money judgment for the corporation. *Steinway v. Griffith Consolidated Theatres,* 1954 OK 156, 273 P.2d 872.

¶ 20 There are few decisions from this jurisdiction that are instructive on the issues before the Trial Court. However, the Oklahoma Corporations Act is based on the Delaware Corporations Act. *Woolf v. Universal Fidelity Life Ins. Co.,* 1992 OK CIV APP 129, ¶ 6, 849 P.2d 1093, 1095. "It is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state." *Bank of the Lakes, Langley, Oklahoma v. The First State Bank, Ketchum, Oklahoma,* 1985 OK 81, ¶ 9, 708 P.2d 1089, 1091. "[Because] the Oklahoma General Corporation Act is based on the Delaware Act, decisions of the Delaware Courts are very persuasive." *Woolf,* 1992 OK CIV APP 129 at ¶ 7, 849 P.2d at 1095.

¶ 21 Therefore, while the Appellees argue that Oklahoma law is the only relevant law in determining these issues, in the absence of Oklahoma authority we may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions. *See Hargrave v. Canadian Valley Elec. Co-op., Inc.,* 1990 OK 43, ¶ 12, 792 P.2d 50, 54 (relying on Colorado and federal case law to find that the demand futility rule applies to derivative actions prosecuted pursuant to Oklahoma law); *Warren v. Century Bankcorporation, Inc.,* 1987 OK 14, ¶ 8, 741 P.2d 846, 849 (adopting the intrinsic fairness aspect of the business judgment rule in Delaware law as "consistent with Oklahoma's extant jurisprudence").

¶ 22 As relevant to the derivative claim, Beard's pleadings meet the verification requirement in 12 O.S.2001 § 2023.1 and the stock ownership requirement of 18 O.S. 2001 § 1126. Further, Beard alleges that Love breached his fiduciary duty to the corporation to manage 77 Corporation for the benefit of all of its shareholders. Beard alleges specific acts that she contends evidence his breach of fiduciary duty and self-dealing. She alleges, consistent with section 2023.1, that she can adequately represent the interests and enforce the rights of the corporation. Finally, she prays for a money judgement against Love and in favor of the corporation. When tested pursuant to the pleading standards applicable to derivative actions, we find that Beard's pleadings are sufficient to state a derivative claim on behalf of 77 Corporation. *See Gay v. Akin,* 1988 OK 150, ¶¶ 16–18, 766 P.2d 985, 992–93.[3]

¶ 23 In granting judgment on the derivative claim, the Trial Court found that, at best, Beard had only established that any improper expenses had been repaid to the company and that a claim for any other allegedly improper expenses was barred by the statute of limitations. We find disputed material issues of fact preclude summary

---

**3.** *Weston v. Acme Tool Inc.,* 1968 OK 7, 441 P.2d 959, on which Love relies for the specificity required in derivative action pleadings, was de-cided before the adoption of the Oklahoma Pleading Code and is inapplicable.

judgment on this claim.[4] In addition to the disputed facts discussed in the previous section, the parties' divergent views of the proper rental rate for the 77 Corporation property leased to Love Bottling illustrates the unavailability of summary process regarding this claim.

¶ 24 On October 1, 1987, 77 Corporation entered into a lease of its building to Love Bottling. The initial term of the lease was for ten years and granted Love Bottling an option to renew the lease for one additional ten-year term. Whether Love Bottling exercised its option to renew the lease for a second ten-year term in 1997 is not apparent from the record but it does appear that Love Bottling continues to occupy the premises, at least as a tenant at will.[5] The lease initially provided for rent at the rate of $12,000 per month and was signed by Beard as president of 77 Corporation. Sometime prior to August 1, 1991, the rent appears to have been increased to $15,000 per month as evidenced by a handwritten interlineation.

¶ 25 In 1991, 77 Corporation completed construction of a 3,600 square-foot addition to the building at a cost of $81,122.09. The addition housed a wash rack and paint booth to be used by Love Beverages, L.L.C., a corporation owned by Love. On July 23, 1991, after complaints by Beard, the rent on the 77 Corporation lease to Love Bottling was increased from $15,000 to $15,435 per month, effective August 1, 1991, to compensate the corporation for this addition.[6] Following additional complaints by Beard, the rent was increased to $18,000 per month sometime in 2001.

¶ 26 In support of her derivative action on behalf of 77 Corporation, Beard alleges that Love failed to renegotiate the lease with Love Bottling to provide for market rental rates. In her response to Love's summary judgment motion, Beard submitted a portion of a report estimating the "Use Value" of the 77 Corporation/Love Bottling lease to be $25,000 as of July 1, 1998.[7] Love argues that $18,000, also based on an expert's evaluation, is the reasonable rental rate to be charged to Love Bottling. He may be correct, but it is clear that the parties dispute this fact, and if 77 Corporation has received below-market rent, damages of that type can be pursued in a derivative action on behalf of 77 Corporation. *See Wallner v. Parry Prof'l Bldg., Ltd.,* 22 Cal.App.4th 1446, 27 Cal.Rptr.2d 834 (1994).

## C. Statute of Limitations

¶ 27 The Trial Court held that Beard's claims were barred by the statute of limitations. Beard alleges that she instigated this action after Love had ignored her repeated demands for access to corporate records for over a decade. The record reflects numerous written demands for 77 Corporation records by Beard and her lawyers beginning in 1991 and continuing until 2002, eleven of which were submitted with Beard's summary judgment response. The language of each successive letter noted Love's repeated failure to respond to previous demands for access. Beard further alleges that she lacked knowledge to bring her specific allegations against Love until the company finally responded, in part, to her attorney's request for production of documents in March 2001. A letter from Beard's attorney to Love's attorney, dated March 7, 2001,

---

4. The Trial Court's treatment of the statute of limitations is discussed in section C.

5. The prudence and commercial reasonableness of an at-will relationship, if it exists, regarding 77 Corporation's only source of income would be relevant to the issue of Love's fiduciary duty to manage 77 Corporation in that company's best interest.

6. At this rate, it would take 77 Corporation more than fifteen years to recover its investment in this addition, again raising an inference that the transaction might not be commercially reasonable for 77 Corporation.

7. Only two pages of this report were submitted and it is not signed although it appears to have been prepared by Terry L. Ingram, MAI, and appears to be of the kind convertible to admissible evidence at trial as permitted by Rule 13(c). Love did not move to strike Beard's exhibit and referred to the Ingram Appraisal in his April 2006 Reply arguing that its approach was not favored in an analysis conducted by a subsequent appraiser. Love has, therefore, waived any objection to the consideration of the Ingram Appraisal in this summary proceeding. Rule 13(c).

notes that although Love had finally produced documents, the document production remained "incomplete." "[Where] actionable self-dealing is alleged in a derivative suit against a corporate fiduciary, the statute of limitations applies, but its operation may be tolled until such time as a reasonably diligent and attentive stockholder knew or had reason to know of the facts alleged to constitute the wrong." *In re MAXXAM, Inc./Federated Dev. Shareholders Litigation,* 1993 WL 125533, *3 (Del.Ch.1993). The issue here is not when the Corporation could be charged with knowledge of any wrongful conduct, but when the shareholder prosecuting the derivative action could be charged with such knowledge. Drawing all inferences in the light most favorable to Beard, the record establishes that a material issue of fact exists as to whether or not Love's response, or lack thereof, to Beard's repeated requests for information tolled the applicable statute of limitations until Beard knew or should have known of the facts supporting the claims she asserts in her derivative action.

### D. Love's Fiduciary Duties

■ ¶ 28 In her petition, Beard claimed that Love, as majority shareholder of the corporation, had breached his fiduciary duty to manage the corporation for the benefit of all shareholders. "When shareholders challenge actions by a board of directors, generally one of three standards of judicial review is applied: the traditional business judgment rule, an intermediate standard of enhanced judicial scrutiny, or the entire fairness analysis." *Emerald Partners v. Berlin,* 787 A.2d 85, 89 (Del.2001).

■ ¶ 29 When applying the business judgment rule, courts presume that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company and its shareholders." *Id.* (citing *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984)). "[T]he business judgment presumption is a rule of evidence that places the initial burden of proof on the plaintiff." *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1156, 1162 (Del.1995). "To rebut the presumption of the business judgment rule, a shareholder plaintiff must prove that the board of directors, in reaching its challenged decisions, violated any one of its three fiduciary duties." *Emerald Partners,* 787 A.2d at 91. However, where the majority shareholder exercises his control to gain a benefit not shared with the minority shareholder, the burden shifts to him to prove the intrinsic fairness of the transaction. *Warren,* 1987 OK 14 at ¶ 7, 741 P.2d at 848–49. Drawing all inferences in the light most favorable to Beard, the business judgment rule does not insulate Love from this Court's scrutiny. The entire fairness of Love's conduct is at issue. The evidence of personal benefits to Love not shared with Beard create issues of fact precluding summary judgment.

### E. Beard's Dissolution/Buyout Claim

■ ¶ 30 Relying on *Sutter v. Sutter Ranching Corp.,* 2000 OK 84, 14 P.3d 58, Love argues that an Oklahoma corporation can only be dissolved as permitted by statute. Love distinguished the cases cited by Beard in support of her request for dissolution of the company as derived from jurisdictions that provide for a statutory method of dissolution at the request of a minority shareholder. Love correctly notes that the Oklahoma General Corporation Act does not provide that statutory remedy except with respect to farming and ranching corporations. Love's conclusion, however, that the statutory methods for dissolving an Oklahoma corporation are exclusive is wrong as a matter of law and directly contradicted by the case authority on which he relies.

> There is a recognized exception to the general rule that courts will not exercise equitable power over a corporation for the purpose of decreeing its dissolution and distributing its assets. A court of equity can, at the request of a minority shareholder, on a showing of fraudulent mismanagement or misappropriation of funds by the officers, appoint a receiver for a solvent corporation to take charge of its business, and if necessary, to wind up its business.

*Id.* at n. 18, 14 P.3d at 62, n. 18. Therefore, to the extent that the Trial Court denied Beard's request for dissolution of 77 Corporation on the basis that it lacked any authori-

ty to do so, *Sutter* stands for the proposition that the authority exists.

¶ 31 Beard alleged mismanagement, self-dealing and oppressive conduct by Love and supported those allegations with evidentiary material demonstrating that Love made zero-interest loans to himself and his company, did not declare or pay any dividend in the twenty-year history of the company despite its alleged income-generating purpose, improperly paid the expenses of third parties with corporate funds and allowed those expenses to be repaid without collecting interest, and collected below-market rent from Love Bottling. Regardless of whether the statute of limitations bars the corporation from recovering for any of these items, they are relevant to Beard's dissolution claim. Love disputes some of these facts and otherwise argues that he properly managed the corporation. Nonetheless, Beard's allegations, if proven, are the kind on which the court could exercise its equitable jurisdiction to dissolve 77 Corporation. Material issues of fact, therefore, preclude summary judgment against Beard on this claim.

¶ 32 Likewise, authority exists on which Beard's alternative request for the purchase of her interest in 77 Corporation could be granted. *See* 18 O.S. Supp.2004 § 1091 setting forth the appraisal rights of minority shareholders where there has been a merger or consolidation of two companies. Love's motion for summary judgment did not address the factual basis necessary to determine, as a matter of law, that Beard is not entitled to prevail on this claim. *Cinco Enters., Inc. v. Benso,* 1994 OK 135, ¶ 12, 890 P.2d 866, 871 (the moving party has the burden of showing that it is entitled to judgment). Consequently, Love was not entitled to summary judgment on this issue.

### F. Attorney Fees

¶ 33 In their response to Beard's request for appellate briefing, Appellees requested appeal-related attorney fees. Oklahoma Supreme Court Rule 1.14 provides that a motion for appeal-related attorney fees must be made by either: (1) "a separately filed and labeled motion in the appellate court prior to issuance of mandate;" or (2) "in the applicant's brief on appeal in a *separate portion that is specifically identified.*"

Oklahoma Supreme Court Rule 1.14, 12 O.S. 2001, ch. 15, app., 1 (emphasis added). Further, "the motion must state the statutory and decisional authority allowing the fees." *Id.* Appellees' request for appeal-related attorney fees states, in its entirety, "Appellees respectfully request that this Court deny Appellant's Motion for Leave to Submit Appellate Briefs and that this Court grant Appellees any and all other relief to which they are entitled including their reasonable attorney fees incurred in responding to Appellant's Motion." Appellees' request does not satisfy the requirements of Rule 1.14 and would be denied even if they had prevailed in this appeal. Because Appellees are not the prevailing party in this appeal, their request for appeal-related attorney fees is denied.

### CONCLUSION

¶ 34 The record on appeal establishes that issues of material fact exist as to each claim asserted by Beard. Accordingly, the Judgment of the Trial Court is reversed and the case is remanded for further proceedings consistent with this opinion.

¶ 35 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

RAPP, C.J., and WISEMAN, J., concur.