74 F.3d 1249
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Randy MARTIN and Patty Martin, Plaintiffs-Appellants/Cross-Appellees,
v.
SHELTER GENERAL INSURANCE COMPANY, a Missouri corporation,
Defendant-Appellee/Cross-Appellant.
 Nos. 94-5150, 94-5239.
 United States Court of Appeals, Tenth Circuit.
 Jan. 10, 1996.
 
 Before TACHA, BALDOCK, and KELLY, Circuit Judges.
 ORDER AND JUDGMENT[1]
 BALDOCK, Circuit Judge.
 
 
 1
 Plaintiffs Randy and Patty Martin appeal from a jury verdict in their favor in a diversity suit against Defendant Shelter General Insurance Company. Plaintiffs assert numerous trial errors. Defendant cross-appeals the district court's award of prejudgment interest to Plaintiffs. We exercise jurisdiction under 28 U.S.C. 1291.
 
 I.
 
 2
 The parties are familiar with the facts; we set forth only those facts necessary for our disposition. Plaintiffs filed an insurance claim with Defendant when a fire destroyed their home. Defendant denied coverage. Plaintiffs sued Defendant for breach of contract ("contract claim"), breach of implied covenant of good faith and fair dealing ("bad faith claim"), and intentional infliction of emotional distress ("IIED claim"). Upon subsequent investigation of Plaintiffs' claim, Defendant in December 1992 sent Plaintiffs an Offer to Confess Judgment for $92,671.92 under the insurance contract and $27,941.73 attorney's fees. In February 1993, Defendant tendered an "unconditional payment" to Plaintiffs in the same amounts--$92,671.92 under the insurance policy and $27,941.73 attorney's fees, for a total of $120,863.65. On February 22, 1993, Plaintiffs' counsel returned the $120,863.65 payment to Defendant and rejected Defendant's Offer to Confess Judgment.
 
 
 3
 In May 1993, Defendant filed an action for declaratory and injunctive relief in the district court. Defendant maintained that the $120,863.65 tendered to Plaintiffs constituted full satisfaction of Defendant's contractual obligation and requested the court enjoin Plaintiffs from instituting suit for contractual or extra-contractual damages against it. On June 1, 1994, the court ruled that the $120,863.65 payment was truly "unconditional" and that acceptance would not foreclose Plaintiffs' suit against Defendants. Plaintiffs then cashed the checks.
 
 
 4
 At the close of the evidence at trial, the court granted Defendant's motion for directed verdict on Plaintiffs' IIED claim. The jury awarded Plaintiffs $132,372.45 on their contract claim and $10,000 on their bad faith claim.
 
 
 5
 In computing the judgment, the court subtracted the $92,671.92 policy amount portion of the unconditional payment from the $132,372.45 contract damages. The court awarded Plaintiffs $43,369.70 in prejudgment interest on the $120,863.65 unconditional payment. The court entered judgment for Plaintiffs for $85,070.24 (adjusted verdict amount plus prejudgment interest). After a hearing, the court awarded Plaintiffs $71,296.56 attorney's fees. This appeal followed.
 
 II.
 
 6
 Plaintiffs maintain that the district court erred by: (1) refusing to instruct the jury on consequential damages and excluding consequential damages from the trial; (2) submitting instructions to the jury on comparative bad faith and an erroneous statement of the burden of proof in a bad faith claim; (3) refusing to instruct the jury on the failure of an attorney to participate in an Affidavit and Examination Under Oath ("EUO"); (4) refusing to grant a mistrial based on Defendant's witnesses' and counsel's trial misconduct; (5) refusing to admit evidence of Defendant's attempt to sue its own attorney; (6) admitting evidence of Defendant's unconditional payment to Plaintiffs; (7) admitting hearsay evidence contained in an EUO; and (8) granting an unreasonable attorney's fees award to Plaintiffs.
 
 
 7
 In a challenge to the district court's jury instructions, we review the record as a whole and "determine whether the instructions correctly state the applicable law and provide the jury with ample understanding of the issues and standards of the case." Lamon v. City of Shawnee, 972 F.2d 1145, 1153 (10th Cir.1992), cert. denied, 113 S.Ct. 1414 (1993). "[O]nly prejudicial error in the jury instructions will mandate reversal." Id. "We review the district court's denial of a motion for mistrial for abuse of discretion." Rios v. Bigler, No. 94-3240, --- F.3d ----, 1995 WL 607025, at * 6 (10th Cir. Oct. 17, 1995). "The admission or exclusion of evidence lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." Wheeler v. John Deere Co., 935 F.2d 1090, 1099 (10th Cir.1991). "As a matter of Oklahoma law, the district court's award of an attorney's fee must be upheld if reasonable, and can be modified or vacated only if the court has abused its discretion." Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1464 (10th Cir.1989).
 
 
 8
 We have carefully reviewed the parties briefs, the district court's orders and the entire record on appeal. Applying the foregoing standards to the facts, we conclude the district court's instructions to the jury correctly stated the applicable law and provided the jury with ample understanding of the issues. Consequently, we find no prejudicial error. Lamon, 972 F.2d at 1153. We also conclude the district court did not abuse its discretion in: (1) denying Plaintiffs' motion for mistrial; (2) refusing to admit evidence of Defendant's attempt to sue its own attorney; (3) admitting evidence of Defendant's unconditional, pre-trial payment to Plaintiffs; and (4) admitting hearsay evidence contained in an EUO. Rios, 1995 WL 607025, at * 6; Wheeler, 935 F.2d at 1099. We conclude the district court's attorney's fee award was reasonable and find no abuse of discretion. Thompson, 875 F.2d at 1464.
 
 III.
 
 9
 Plaintiffs also contend that the district court erred in granting Defendant a directed verdict on their IIED claim. Specifically, Plaintiffs contend they produced sufficient evidence to submit their IIED claim to the jury based upon Defendant's abusive investigative conduct and intimidating behavior. In a diversity case, the underlying cause of action is governed by the state's substantive law, while "the sufficiency of the evidence for purposes of granting a directed verdict is governed by federal law." Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498 (10th Cir.1984). We review the district court's ruling on a motion for directed verdict de novo. Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1416 (10th Cir.1990).
 
 
 10
 "Oklahoma recognizes intentional infliction of emotional distress as an independent tort." Eddy v. Brown, 715 P.2d 74, 76 (Okla.1986). "[N]ot every abusive outburst or offensive verbal encounter may be converted into a tort" however. Id. Rather, to prove intentional infliction of emotional distress in Oklahoma, one must meet the narrow standards of 46 of the Restatement (Second) of Torts, which specifies, in pertinent part:
 
 
 11
 (1) One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
 
 
 12
 Id. (quoting Restatement (Second) of Torts 46). "[I]t is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet these standards." Zahorsky v. Communty Nat'l Bank, 883 P.2d 198, 199-200 (Okla.Ct.App.1994).
 
 
 13
 After review of the record and consideration of the above-principles, we conclude the district court did not err in granting Appellee's motion for directed verdict. The court noted that the only evidence Plaintiffs offered in support of their IIED claim was that Defendant's investigative attorney "moved his coffee cup from hand to hand, [and] may have banged it down on the table a little more roughly than is usual" during the EUO of Plaintiff Randy Martin. The court determined that this evidence was not sufficiently extreme or outrageous to meet the standards required to prove a claim for intentional infliction of emotional distress under Oklahoma law. See Eddy, 715 P.2d at 76. We find no reversible error and conclude the court properly granted Defendant's motion for directed verdict.
 
 IV.
 
 14
 In its cross-appeal, Defendant maintains that the district court erred in granting Plaintiffs prejudgment interest from April 1992 to June 1994 on the $120,863.65 unconditional payment Defendant tendered to Plaintiffs before trial. Defendant does not dispute Plaintiffs are entitled to prejudgment interest; rather, Defendant contests the amount of prejudgment interest awarded by the district court. Defendant contends Plaintiffs are entitled to prejudgment interest from April 1992 to February 1993--the date Defendant furnished the unconditional payment to Plaintiffs. Plaintiffs argue the court correctly determined they were entitled to prejudgment interest until June 1, 1994--the date the court ruled Defendant's payment was truly unconditional. The parties agree that we review the district court's determination as to prejudgment interest for abuse of discretion. MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express, Inc., 962 F.2d 1470, 1477 (10th Cir.1992).
 
 
 15
 The district court concluded there was a genuine dispute over the unconditional nature of the payment until it issued its ruling on June 1, 1994. Specifically, the court stated:
 
 
 16
 Plaintiffs had these funds available for use beginning on June 1, 1994, when the court determined that the tender was, indeed, unconditional; that acceptance of the checks would not constitute admissions in the separately pending civil declaratory judgment action, would not constitute satisfaction of plaintiffs' claims in this case, and that they were therefore free to cash them prior to trial. Defendants retained the earning power of the money before the court ruled that the checks could be cashed without detriment to Plaintiffs' lawsuits, and should consequently remain responsible for prejudgment interest to June 1, 1994.
 
 
 17
 As a result, the court awarded Plaintiffs prejudgment interest until June 1, 1994 under Okla. Stat. tit. 36, 3629(B).[2]
 
 
 18
 Under the specific facts of this case, we cannot say the court's prejudgment interest determination amounted to an abuse of discretion. The record reflects Defendant: (1) in December 1992 sent Plaintiffs an Offer to Confess Judgment for $92,671.92 on the insurance contract and $27,941.73 attorney's fees; (2) two months later in February 1993 sent Plaintiffs an "unconditional" payment in the same amounts--$92,671.92 on the insurance contract and $27,941.73 attorney's fees; and (3) two months later in May 1993 filed a declaratory judgment asking the court to declare their contractual obligations completely satisfied and to enjoin Plaintiffs from instituting suit against it. As the district court noted:
 
 
 19
 While retaining the funds tendered, Defendant attempted to cut off Plaintiff's entitlement to pre-judgment interest by characterizing the tender as an absolutely unconditional payment. However, Defendant was contemporaneously contending, in a related declaratory judgment action, that the payments, while unconditional, should still be considered to be in full satisfaction of all claims. This approach showered sufficient doubt upon the unconditional nature of the payments to justify the plaintiffs action in not accepting them without a court order determining the legal effect of receipt.
 
 
 20
 Based on this evidence, we cannot say the district court abused its discretion in determining that a genuine dispute existed as to whether the payment was unconditional, and that prejudgment interest should run until Plaintiffs obtained use of the funds on June 1, 1994.[3]
 
 
 21
 The court incorrectly calculated the interest, however. The court computed $38,792.26 in prejudgment interest on the $120,863.65 using the following formula: $120,863.65 X .15 (annual interest rate) divided by 365 days per year X 781 days (April 23, 1992 to June 1, 1994) = $38,792.26. The court erred by using 781 days in the formula because the period April 23, 1992 to June 1, 1994 is only 769 days. Additionally, the court computed $3,788.44 prejudgment interest on the remaining amount of the verdict on the contract claim, $11,508.80, using 801 days (April 23, 1992 to June 20, 1994). The court erred in using 801 days because the period April 23, 1992 to June 20, 1994 is only 788 days. We therefore REMAND for the court to recalculate the prejudgment interest amount in accordance with this opinion. We AFFIRM the district court in all other respects.
 
 
 22
 AFFIRMED in part and REMANDED in part.
 
 
 23
 KELLY, Circuit Judge, concurring in part and dissenting in part.
 
 
 24
 I concur in parts I-III of the Court's order and judgment. I respectfully dissent from part IV.
 
 
 25
 Upon consent of the parties, this case was tried by a magistrate judge. In a pretrial ruling, the magistrate judge held that evidence concerning Defendant's tender of two checks (total amount $120,613.65) was admissible under Fed.R.Evid. 408 because the tender was unconditional, rather than an offer in compromise. Aplees. Supp.App. 457-458 (Order filed June 1, 1994). The magistrate judge's finding that "[t]he face of the drafts and related correspondence show an unconditional payment," id. at 458, is supported by the drafts and the letter accompanying them:
 
 
 26
 I am enclosing now a payment of $92,671.92 under the policy and a payment of $27,941.73 for attorney fees. Both of these drafts are payable to you and the Martins. This is not being offered as a "settlement." These payments are unconditional and you and the Martins may cash the drafts without prejudice to any additional claims the Martins may wish to pursue.
 
 
 27
 Id. at 449. Plaintiffs contend that until the court ruled on whether the tender was unconditional, albeit in the context of deciding admissibility, they are entitled to prejudgment interest. That is not the law.
 
 
 28
 Although we apply an abuse of discretion standard to rulings on prejudgment interest, the proper exercise of discretion in this diversity case requires a correct understanding of the law of Oklahoma. It is clear that under Oklahoma precedent, an advance or an unconditional tender stops the running of interest to the extent of the advance or unconditional tender. Edwards v. Lachman, 567 P.2d 73, 78 (Okla.1977); Woolf v. Universal Fidelity Life Ins. Co., 849 P.2d 1093, 1097 (Okla.Ct.App.1993) (dicta); cf. Shadoan v. Liberty Mutual Fire Ins. Co., 894 P.2d 1140, 1144 (Okla.App.1994) (insured entitled to prejudgment interest on net judgment which did not include amount advanced). Indeed, this is the generally accepted view. See 8A John A. Appleman & Jean Appleman, Insurance Law and Practice 4894.25 at 97-100 (1981). The lower court's unappealed determination that the tender was unconditional is dispositive. It is irrelevant that Plaintiffs declined to cash the checks prior to a judicial determination of their legal import.
 
 
 29
 Although Okla. Stat. Ann. tit. 36, 3629(B) (West 1990) provides for 15% interest, the statute necessarily assumes that the principal has not been paid. The purpose of prejudgment interest is to compensate the injured party for loss of use of compensatory damages prior to judgment. Fleming v. Baptist General Convention, 742 P.2d 1087, 1096 (Okla.1987). Under the court's rationale, interest would be assessed, regardless of the fact that nothing is owed because a tender was accepted. Nor does the court's rationale allow for tolling of prejudgment interest in the event a partial contractual payment is accepted.
 
 
 30
 Where an unconditional tender has been made, but refused by the Plaintiff, the policy of the statute is not well served. An insurance company should be encouraged to pay when it determines it is liable, and the incentive should be the cessation of prejudgment interest on the amount of the unconditional tender. These goals are fully consistent with any reasonable reading of the statute.
 
 
 31
 A genuine dispute over whether the payment is unconditional, or a refusal to accept an unconditional payment cannot operate to defeat the legal effect of an unconditional tender. For example, in Edwards v. Lachman, 567 P.2d at 78, the Oklahoma Supreme Court concluded that defendants were entitled to a credit for judgment interest on the amount tendered unconditionally from the date of the tender until the plaintiff accepted the tender. The supreme court reached this result even though the tender was somewhat ambiguous on its face, at least until the last paragraph, and despite the district court's agreement with plaintiffs' position that the tender was qualified. Still, the court of appeals and supreme court reversed and held the tender unconditional.
 
 
 32
 The court rejects the clear import of Oklahoma law by relying upon distinctions which do not make a difference. Edwards and Woolf should not be ignored merely because they are not insurance cases or involve tenders after judgment. Section 3629(B) is merely a statute which provides for prejudgment interest; it does not purport to address the principles which inform the award of prejudgment interest when an unconditional tender is made, nor does it purport to alter the remedial purpose of prejudgment interest.
 
 
 33
 I would reverse as excessive the award of prejudgment interest.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Under Okla. Stat. Ann. tit. 36, 3629(B), "[i]f the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict."
 
 
 [3]
 The dissent cites Edwards v. Lachman, 567 P.2d 73 (Okla.1977) and Woolf v. Universal Fidelity Life Ins. Co., 849 P.2d 1093 (Okla.App.1993), for the proposition that "under Oklahoma precedent, an advance or unconditional tender stops the running of interest to the extent of the advance or unconditional tender." Neither Edwards nor Woolf, however, involved prejudgment tenders of an unspecified sum. Rather, Edwards and Woolf dealt with post-judgment tenders of a specified, liquidated sum the parties agreed was owed as a result of a judgment. The court's conclusion in Edwards and tentative dicta in Woolf that the post-judgment tender of a specified, liquidated sum should toll the running of interest comports with Oklahoma law and seems fair. It seems imminently fair to toll the running of interest where a sum is specified and a tender is made, but rejected by one party
 We are not confronted in the instant case, however, with the post-judgment tender of an uncontested, specified, liquidated sum. Instead, this case involves a pre-trial payment of an unspecified, unliquidated claim. This difference is critical because pre-trial payments on an insurance contract are governed by a specific Oklahoma statute--i.e., Okla. Stat. Ann. tit. 36, 3629(B):
 It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety days (90) of receipt of that proof of loss. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict.
 Neither Edwards nor Woolf considered 3629(B) because they were not insurance cases, and because both involved post-judgment tenders, not prejudgment interest.
 The dissent adds that 3629(B) was designed to encourage insurance companies to make pretrial payments. In the context of such policy-based observations, the dissent states that an unconditional pretrial payment should toll the running of prejudgment interest under 3629(B). This may be so. However, we are not free to legislate fair-sounding policy when the Oklahoma legislature enacted specific statutory language in 3629(B). Instead, the Oklahoma legislature said in 3629(B) that insurance companies must make an unconditional payment sufficient to satisfy their contractual obligations, or risk being slapped with 15% interest to the date of the verdict. Thus, we reject the dissent's invitation to substitute our views of policy and fairness for the unequivocal statutory language chosen by the Oklahoma legislature. We are not at liberty to alter the clear intent of the Oklahoma legislature under the rationale of two, inapposite post-judgment interest cases.