Patty Barnes WOOLF, An Individual,
and J.B. Richards Securities
Corporation, Appellants,

v.

UNIVERSAL FIDELITY LIFE
INSURANCE COMPANY, A
Corporation, Appellee.

No. 77935.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 13, 1992.

Rehearing Denied Nov. 24, 1992.

Certiorari Denied March 24, 1993.

Charles N. Berry, Jr., Oklahoma City, for appellants.

Michael M. Stewart, Wesley C. Fredenburg, Todd Taylor, Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Judge:

Universal Fidelity Life Insurance Company (Universal) is an insurance company with its offices in Duncan, Oklahoma. Universal began to issue stock in 1955. At the annual shareholders' meeting in 1989, the Board of Directors of Universal proposed an amendment to its Certificate of Incorporation. The amendment was done in accordance with the provisions of the new Oklahoma General Corporation Act, 18 O.S.Supp.1986 § 1001 et seq. The new Oklahoma General Corporation Act was based on the Delaware General Corporation Act and superseded the Business Corporation Act.

The changes proposed to be made to the Articles of Incorporation were: (1) stock options could be granted to officers and directors without shareholders' approval; (2) minority shareholders lost dissenting and appraisal rights; (3) corporate directors were released from individual monetary liability for breach of their fiduciary duty to the corporation; (4) an 80% vote was to be required for certain business acts rather than a simple majority; and, (5) the amendment provided that directors were not liable for negligent or grossly negligent business decisions. The amendments were adopted.

Universal had sent a proxy statement to each shareholder. In its proxy statement the shareholders were advised that the amendment might adversely affect them. It offered them the right to dissent and have their shares appraised in accordance with Oklahoma law. Patty Barnes Woolf and J.B. Richards Security Corporation (collectively Shareholders) dissented. Shareholders filed an action against Universal for the fair value of their stock. Woolf owned 10,909 shares and Richards owned 2,746 shares. Together, this represented less than 3% of Universal's outstanding stock.

In entering judgment, the court found the value of the stock was $11.15 per share. The court then discounted that value by 12% because it was a minority interest. The Shareholders were allowed prejudgment interest at the rate of 7.25% [see 18 O.S.Supp.1988 § 1091(H)] for a period of 24 months. Shareholders requested attorney fees but were denied.

Shareholders do not appeal the value of $11.15 per share. That part of the judgment is final. They do contend the trial court erred when it found the value of the stock should be discounted 12% due to its minority position in a small, nonpublicly traded, closely held corporation. They assert this discount is inconsistent with the trial court's conclusion of law, which is:

1 ... The Oklahoma General Corporations Act (hereinafter referred to as the "Act"), 18 O.S. § 1001 et seq., should be construed consistently with the interpretations and decisions of the Delaware Courts since the Oklahoma Act was tak-

en from the Delaware General Corporations Act. (Citations omitted).

Shareholders contend the Delaware case of *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137 (Del.1989), holds that a minority shareholders' stock may not be so discounted as it would impose a penalty upon minority shareholders for lack of control. Here, the 12% discount was based on the following: the Shareholders had no controlling interest, no seat on the Board of Directors, no position as officers in the corporation, no managerial impact on Universal's operations and, no readily available market existed for Universal's common stock.

■ We agree with the trial court that the Oklahoma General Corporation Act is based upon the Delaware General Corporations Act, and should be interpreted in accordance with Delaware decisions. In *Bank of Lakes v. First State Bank*, 708 P.2d 1089, 1091 (Okl.1985), the Court held:

It is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon that statute by the highest court of the other state. (Citations omitted).

Universal maintains that many jurisdictions have followed the discount rule. *Moore v. New Ammest, Inc.*, 6 Kan.App.2d 461, 630 P.2d 167 (1981); *McCauley v. Tom McCauley and Son, Inc.*, 104 N.M. 523, 724 P.2d 232 (App.1986); *Whittemore v. Fitzpatrick*, 127 F.Supp. 710 (D.Conn. 1954); *Drybrough v. United States*, 208 F.Supp. 279 (W.D.Ky.1962). The trial court specifically relied on *McCauley* and *Whittemore*. However, since the Oklahoma General Corporation Act is based on the Delaware Act, decisions of the Delaware Courts are very persuasive.

*Cavalier*, was decided in September, 1989, prior to the judgment we are considering. Universal maintains the fact situation in that case is distinguishable, and it is inapplicable. In *Cavalier*, a minority shareholder dissented and sought the fair value of his stock in a closely held Delaware corporation. His request for appraisal came following a corporate merger. Universal contends this difference is pivotal, that in *Cavalier* the shareholders were forced to sell their interests in the old corporation because there was a 100% change of ownership. Here, Shareholders dissented because of sweeping changes in the original certificate of incorporation.

Regarding minority shareholder discounts, we see no real distinction between a situation where a minority shareholder dissents because of a merger, as in *Cavalier*, and where a minority shareholder dissents because of major changes in the Certificate of Incorporation. Both seek to be paid the fair value of their interest in a wholly changed corporation. Both, in effect, are involuntarily selling their stock. The *Cavalier* Court said:

The application of a discount to a minority shareholder is contrary to the requirement that the company be viewed as a "going concern".

\* \* \* \* \* \*

Discounting individual share holdings injects into the appraisal process speculation on the various factors which may dictate the marketability of minority shareholdings. More important, to fail to accord to a minority shareholder the full proportionate value of his shares imposes a penalty for lack of control, and unfairly enriches the majority stockholders who may reap a windfall from the appraisal process by cashing out a dissenting shareholder, a clearly undesirable result.

Since the Delaware court has rejected the discount rule, Oklahoma should follow the same rule. We hold the trial court erred in applying a 12% discount to the value of Shareholders' stock.

■ Next, Shareholders contend the trial court erred in fixing the rate of prejudgment interest at 7.25% for 24 months. Shareholders contend this rate of interest is insufficient and cite 18 O.S.Supp.1988 § 1091(H), which allows the trial court to take into consideration the rate of interest the corporation would have to pay to borrow money during the pendency of the proceeding when setting the rate of interest to be recovered by the shareholder. Shareholders contend Universal would have

paid several points more than 7.25% to borrow funds during the time this action was at issue.

18 O.S.Supp.1988 § 1091(H), does not require the trial court to award, as the rate of interest, precisely the rate the corporation would have paid to borrow money during the pendency of the appraisal action. This is but one of the factors to be weighed by the trial court in setting the rate of interest. The trial court may also determine what a prudent investor would have earned during that time period and consider that rate as a factor. Section 1091(H) does not limit the trial court to the one factor. It provides:

> H. After determining the shareholders entitled to an appraisal, the court shall appraise the shares, determining their fair value exclusive of any element of value arising from the accomplishment or expectation of the merger or consolidation, together with a fair rate of interest, if any, to be paid upon the amount determined to be the fair value. In determining such fair value, the court shall take into account all relevant factors. In determining the fair rate of interest, *the court may consider all relevant factors*, including the rate of interest which the surviving or resulting corporation would have to pay to borrow money during the pendency of the proceeding. (Emphasis added.)

After considering many factors, the trial court set the rate of interest to be recovered by Shareholders at the rate it determined to be the prudent investor rate. Shareholders have failed to show an abuse of discretion by the trial court in the amount of interest paid.

■ Shareholders also contend the 24 month period allowed by the trial court to collect interest was 59 days short, because the period of time between the filing of the amended Certificate of Incorporation, and the date of judgment, was 24 months and 59 days. We agree. Section 1091(H) does not specify the exact number of days such interest shall run. However, in *Sporborg v. City Specialty Stores*, 35 Del.Ch. 560, 123 A.2d 121 (1956), the Delaware Court

based the length of time for which interest must be paid, upon the fact that the corporation had use of the shareholder's money, from the date of the merger until the date of payment, without any ownership obligation toward the dissenting shareholder. While *Sporborg* speaks to both post-judgment and prejudgment interest, we agree with its reasoning and find Shareholders entitled to prejudgment interest from the date of the filing of the amended Certificate of Incorporation to the date of judgment.

■ Shareholders contend that acceptance by them of the offer made in the proxy statement allowing any shareholder the right to dissent, constituted a contract between Universal and themselves. It follows, they say, that they are entitled to recover attorney fees pursuant to 12 O.S. 1981 § 936. Section 936 authorizes attorney fees to the prevailing party in a contract action to recover money. Shareholders contend the new Oklahoma General Corporation Act, in authorizing the amendment to Universal's Certificate of Incorporation, took away their right to dissent, have their shares appraised at the fair value, and purchased by the corporation. Thus, when they accepted the offer to dissent, as offered in the proxy statement, a contract resulted. We do not agree. Section 936 does not apply.

■ While the new Oklahoma General Corporation Act, 18 O.S.Supp.1986 § 1001 et seq., allows limitations on a dissenting shareholders' rights, § 1003 contains a savings clause which provides:

> All rights, privileges and immunities vested or accrued by and pursuant to any laws enacted prior to the adoption or subsequent amendment of the Oklahoma General Corporation Act, all suits pending, all rights of action conferred, and all duties, restrictions, liabilities and penalties imposed or required by and pursuant to laws enacted prior to the adoption or amendment of the Oklahoma General Corporation Act, shall not be impaired, diminished or affected.

The "old" Business Corporation Act contained a provision allowing shareholders

the right to dissent. 18 O.S.1981 § 1.157(a)(1). The new Act authorizes but does not require this right. Shareholders' right to dissent was not extinguished by statute. It was not taken away until the amendment to the Certificate of Incorporation was adopted. Shareholders' right to dissent and seek appraisal was not granted by the proxy statement issued by Universal. No contract resulted. The proxy statement merely described existing rights.

■ 18 O.S.Supp.1988 § 1091(J), allows the trial court to tax costs to the parties in such manner as it deems equitable. On application by a shareholder, the Court is allowed to order all, or a portion, of the expenses of the proceeding, including "attorney fees" to be charged pro rata against the value of all of the shares involved. It does not authorize the award of attorney fees against the corporation in a dissenting shareholder's appraisal action.

The corporation tendered the amount of the judgment into court, and the Court ruled the tender stopped the accrual of interest. Shareholders object. While we tend to agree with the trial court, this issue is not before us for consideration because it was not raised in the Petition in Error. See *Martin v. Harrah Independent School District*, 543 P.2d 1370 (Okl.1975).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED for further proceedings not inconsistent with this opinion.

ADAMS, P.J., and JONES, J., concur.