**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRANZAN ALTERNATIVE
INVESTMENT FUND, LLLP, on behalf
of itself and all others similarly situated,

     Plaintiff - Appellant,

v.

BANK OF NEW YORK MELLON
TRUST COMPANY, NA,

     Defendant - Appellee,

and

ENERGY CORPORATION OF
AMERICA,

     Defendant.

No. 16-1068
(D.C. No. 1:14-CV-02513-REB-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

     Branzan Alternative Investment Fund, LLLP appeals from the dismissal of its

putative class-action claims against The Bank of New York Mellon Trust Company, N.A.

(Trustee) for failure to comply with the procedural requirements for derivative claims.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Branzan was an investor in units of the Eastern American Natural Gas Trust (the Trust). It claims that Trustee breached the terms of the trust agreement that governed liquidation of the Trust by, among other things, selling Trust assets without first obtaining an appraisal.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

The parties agree that Delaware law governs the dispute. As framed by Branzan, the sole issue on appeal is whether its claims are direct or derivative. A direct claim is one brought by an investor for a violation of the investor's rights. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). A derivative claim, in contrast, is one brought by an investor (say, a stockholder) on behalf of the entity (say, a corporation) in which the investor has invested. *See id.* (a derivative suit "enables a stockholder to bring suit on behalf of the corporation for harm done to the corporation"). The investor seeks to increase the value of its investment by obtaining a recovery for the entity. To prevent derivative suits from interfering with the proper management of the entity, however, they are subject to certain procedural requirements. *See In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1227 (10th Cir. 2016); Fed. R. Civ. P. 23.1 (requirements for derivative claims); Del. Ch. Ct. R. 23.1 (same). For example, under Delaware law, "the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is

---

[1] Branzan also claims that Trustee breached other trust provisions concerning voting and informational rights of unitholders. But it has conceded, perhaps ill-advisedly, that this claim rises or falls with the appraisal claim.

excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Branzan does not contend that it has complied with these procedural requirements. Rather, it says that the requirements do not apply because its claims are direct ones.

Branzan further narrows the issues before us by forgoing other potential arguments. It has not contested that Delaware case law regarding derivative actions in the corporation and limited-partnership context also applies to investment trusts. In addition, it agreed at oral argument that even though the Trust has been liquidated, a Delaware statute would permit it to pursue a derivative claim on behalf of the Trust. *See* 12 Del. C. § 3810(g) (relating to statutory trusts after cancellation of certificate of trust). And its original briefing in this court acknowledged the general rule set forth in *Tooley* that the test for determining whether an action is a derivative action, rather than a direct claim, turns "solely on the following questions: Who suffered the alleged harm . . . and who would receive the benefit of the recovery or other remedy?" *Tooley*, 845 A.2d at 1035.

Against this backdrop, Branzan's principal arguments on appeal have been that the *Tooley* test does not apply here because Delaware law has established (1) that the test applies only to breach-of-fiduciary-duty claims and (2) that breach-of-contract claims (such as its appraisal claim) can be pursued as direct actions. After oral argument in this appeal, however, the Delaware Supreme Court concluded otherwise in *El Paso Pipeline*

3

*GP Co., L.L.C. v. Brinckerhoff*, No. 103, 2016, 2016 WL 7380418 (Del. Dec. 20, 2016); and Branzan concedes that the above two arguments are now foreclosed.[2]

Branzan therefore pursues only a third argument, which it touched on in its opening brief: It contends that *El Paso* supports the proposition that the *Tooley* test is subject to exceptions based on equity and policy considerations. We disagree. *El Paso* reaffirmed *Tooley*'s statement that the derivative-action test turns "'*solely*'" on the answers to the two questions it poses. *El Paso*, 2016 WL 7380418, at *10 (quoting *Tooley*, 845 A.2d at 1033). And nothing in those two questions relates to equity or policy considerations. Although Branzan points to language in *El Paso* that speaks of policy concerns, that language does not relate to whether an action is a direct action or a derivative action. Rather, it appears only in the discussion of a distinct issue—whether a derivative claim survives a merger. The claim in *El Paso* was by a limited partner against the general partner for breach of a conflict-of-interest provision in the limited-partnership agreement. *See id.* at *7. The court's primary ruling was that this claim was exclusively a derivative claim under the *Tooley* test. *See id.* at *13. The claim-survival issue arose because the limited partnership, as the true owner of the claim, had been acquired in a merger and thereby ceded ownership of the claim to the partnership's successor. *See id.* at *1–2. In holding that the limited partner therefore could no longer pursue its derivative claim, the court discussed the contrary decision by the lower court,

---

[2] At our request the parties submitted supplemental briefs on whether (and if so how) the *El Paso* decision impacts this appeal.

4

which had relied on equity and policy. *See id.* It is this discussion, not the discussion of claim characterization, that Branzan has mistakenly invoked. And in any event, that discussion culminated in the rejection of the argument that equity and policy considerations justified survival of the derivative claim. *See id.* at *2. In our view, *El Paso* makes clear that equity and policy considerations are irrelevant to the *Tooley* test.[3]

We **AFFIRM** the judgment of the district court. Trustee's Conditional Motion to Certify Questions to the Delaware Supreme Court, and Branzan's request for similar certification are **DENIED**.

Entered for the Court


Harris L Hartz
Circuit Judge

---

[3] Further, we question whether equity favors Branzan. For example, although it argues that a derivative recovery would unjustly enrich a "wrongdoer" unitholder complicit in some of the alleged breaches, Aplt. Br. at 61, that is simply a reason to bring a claim against that wrongdoer. (For reasons not apparent in the appellate record, Branzan dropped its claims against the alleged miscreant unitholder in this appeal. *See id.* at 3 n.1.) And Trustee could not be unjustly enriched, as it was not a unitholder. Branzan's opening brief on appeal also says that equity must provide relief because "[a]t the time [it] filed its lawsuit the Trust had terminated and thus no derivative claims were possible." *Id.* at 57. As previously noted, however, Branzan has now conceded that Delaware law permits derivative suits on behalf of terminated trusts.