WATKINS v. HAMM



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WATKINS v. HAMM

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WATKINS v. HAMM
2018 OK CIV APP 2
419 P.3d 353
Case Number: 115047
Decided: 07/31/2017
Mandate Issued: 01/03/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 2, 419 P.3d 353

 

WINSTON O. WATKINS, JR., and LABORERS DISTRICT COUNCIL CONSTRUCTION INDUSTRY PENSION FUND, on behalf of themselves and all others similarly situated, Plaintiffs/Appellants,
v.
HAROLD G. HAMM, JEFFREY B. HUME and WHEATLAND OIL, INC., Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ROGER H. STUART, TRIAL JUDGE

AFFIRMED

Derrick L. Morton, NELSON TERRY MORTON DEWITT & PARUOLO, Edmond, Oklahoma, and J. Daniel Albert, Lee D. Rudy, Leah Heifetz, KESSLER TOPAZ MELTZER, & CHECK, LLP, Radnor, Pennsylvania, for Plaintiffs/Appellants

Michael Burrage, WHITTEN BURRAGE, Oklahoma City, Oklahoma, and
Jay P. Walters, GABLEGOTWALS, Oklahoma City, Oklahoma, for Defendants/Appellees

JOHN F. FISCHER, PRESIDING JUDGE:

¶1 The plaintiffs Winston O. Watkins, Jr., and Laborers District Council Construction Industry Pension Fund, on behalf of themselves and all others similarly situated, appeal a May 2, 2016 order granting defendants Harold G. Hamm's, Jeffrey B. Hume's, and Wheatland Oil, Inc.'s motion to dismiss their amended petition with prejudice. The plaintiffs' petition purports to assert a direct action on behalf of Continental Resources, Inc.'s, shareholders against Hamm, Hume and Wheatland regarding a transaction in which Continental acquired the assets of Wheatland. Oklahoma has not previously recognized a direct action by shareholders against corporate officers and directors. We decline to do so here.

BACKGROUND

¶2 In this litigation, the plaintiffs challenge a 2012 transaction whereby Continental acquired one hundred percent of the assets of Wheatland. Pursuant to a preexisting contract with Continental, Wheatland had the right to participate in wells being drilled by Continental in certain areas. Wheatland had exercised that option in the past and owned a five percent working interest in certain wells. And, Continental was obligated to allow Wheatland to participate in future wells being drilled in Continental's lucrative Balkan Field. Harold Hamm, Continental's founder, Chairman of the Board and Chief Executive Officer, owned seventy-five percent of Wheatland and sixty-eight percent of Continental. Jeffery Hume, Continental's Vice-Chairman of Strategic Growth Initiatives, owned the other twenty-five percent of Wheatland as well as stock in Continental.

¶3 Hamm and Hume approached Continental about purchasing Wheatland's assets, including its contract right to participate in future wells. The Continental Board of Directors formed a Special Committee chaired by Mark Monroe, Continental's former President and Chief Operating Officer, to evaluate the transaction. After the analysis was complete, Continental filed a proxy statement with the Securities and Exchange Commission explaining the Wheatland transaction and soliciting the approval of Continental's stockholders to complete the acquisition. A majority of Continental's stockholders voted to approve the transaction, including eighty percent of the Company's disinterested minority stockholders, like the plaintiffs. As a result, Continental issued approximately $313 million of stock to Hamm and Hume in exchange for Wheatland's assets. Hamm's ownership percentage in Continental increased from 68.04% to 68.2%, and the interest of the minority stockholders decreased from 23.1% to 22.6%.

¶4 On July 18, 2012, the plaintiffs filed a direct and a derivative action against Continental and the Special Committee of Continental's Board of Directors, asserting breach of fiduciary duty, unjust enrichment, and aiding and abetting, as well as class action claims for breach of fiduciary duty and for aiding and abetting. The plaintiffs alleged that demand on Continental's Board of Directors was futile and therefore unnecessary. The plaintiffs alleged that the Wheatland acquisition was a conflicted insider transaction between Continental and its controlling stockholder, Hamm. The plaintiffs also alleged that Continental overpaid Hamm and Hume by at least $100 million in Continental stock, thereby diluting the minority stockholders' economic and voting interests in Continental.

¶5 The defendants moved to dismiss the petition pursuant to 12 O.S.2011 §§ 2012(B)(6) and 2023.1. The defendants argued that the plaintiffs lacked standing to sue because they failed to make a pre-suit demand on Continental's Board of Directors or plead with particularity why such demand would have been futile. The defendants relied on section 2023.1 of the Oklahoma Pleading Code and Aronson v. Lewis, 473 A.2d 805 (Del. 1984).[1] The plaintiffs responded, arguing that in controlling-shareholder transactions, the transaction is subject to Oklahoma's "entire fairness" standard and not Delaware's "valid exercise of business judgment" standard.[2] The district court ultimately denied the defendants' motion on January 8, 2013, citing an order in Louisiana Municipal Police Employees Retirement System v. Continental Resources, Inc., arising out of the same transaction and filed in the Western District of Oklahoma, Case No. 12-CV-667. The district court stayed further proceedings in the case pending a ruling by the federal court on the defendants' motion to dismiss in the Louisiana Municipal Police case. On May 16, 2013, the federal court granted the defendants' motion and dismissed the action in its entirety.

¶6 On June 20, 2013, the plaintiffs in this case filed a motion to lift the stay. The defendants also filed a motion to lift the stay and further requested that the court dismiss the action. By order entered on September 30, 2013, the district court granted the plaintiffs' motion to lift the stay. In addition, the court denied the defendants' motion to dismiss with regards to the derivative action, finding the current status of the law required application of the "entire fairness" standard in controlling shareholder transactions. The court, however, granted the defendants' motion to dismiss with regard to the class action claim based on alleged misleading proxy statements, finding this theory of recovery had been asserted and fully adjudicated in the federal court litigation.

¶7 On June 5, 2014, the defendants filed a motion for reconsideration in light of a recent Delaware Supreme Court case, Kahn v. M&F Worldwide Corporation., 88 A.3d 635 (Del. 2014), which upheld the business judgment standard as the applicable standard of review in controlling shareholder transactions. The defendants requested that the trial court review the adequacy of the plaintiffs' demand-futility allegations in the derivative claim pursuant to Aronson. After additional briefing, the plaintiffs ultimately sought to dismiss their derivative claims without prejudice. By order entered on March 6, 2015, the district court permitted the plaintiffs to dismiss their derivative claims without prejudice.[3]

 

¶8 Subsequently, the defendants moved to dismiss the plaintiffs' remaining class action and breach of fiduciary duty claims. After a hearing on that motion, the district court permitted the plaintiffs to amend their petition, which they filed on December 1, 2015. The amended petition asserted a direct action on behalf of Continental's minority shareholders for breach of fiduciary duty based on the alleged unlawful dilution of their shares as a result of the Wheatland transaction.

 

¶9 The defendants filed a motion to dismiss the plaintiffs' amended petition and/or to strike dismissed claims. The defendants asserted that Oklahoma does not recognize a direct cause of action against corporate officers and directors, that the plaintiffs were barred from attempting to re-plead the disclosure claims previously dismissed, and that the transaction's approval by the independent Special Committee and a majority vote of the minority shareholders reinstated the business judgment presumption, requiring dismissal on the pleadings. The plaintiffs responded, arguing that the district court should follow Oklahoma's "intrinsic fairness" test, which requires those asserting the validity of the challenged transaction to prove, with evidence, that a challenged transaction is intrinsically fair. Relying on Oklahoma law, the plaintiffs argued that dismissal was inappropriate at this stage of the proceedings because the intrinsic fairness issue had not been resolved. See Warren v. Cent. Bankcorporation, Inc., 1987 OK 14, 741 P.2d 846, and Beard v. Love, 2007 OK CIV APP 118, 173 P.3d 796. The district court granted the defendants' motion to dismiss, finding that the plaintiffs had failed to state a claim upon which relief may be granted because their claim must be pursued as a derivative action.

STANDARD OF REVIEW

¶10 The purpose of a motion to dismiss for failure to state a claim is to test the law that governs the claim rather than the facts asserted in support of that claim. Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 5, 222 P.3d 21 (citing Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957)); Groce v. Foster, 1994 OK 88, ¶ 12, 880 P.2d 902. "On review of an order dismissing a petition all allegations in the petition are taken as true." Gens v. Casady Sch., 2008 OK 5, ¶ 8, 177 P.3d 565. Appellate review of a motion to dismiss involves a de novo consideration of whether the petition is legally sufficient. Indiana Nat'l Bank v. Dep't of Human Servs., 1994 OK 98, ¶ 2, 880 P.2d 371. De novo review involves a plenary, independent, and non-deferential examination of the district court's rulings of law. In re Estate of Bell-Levine, 2012 OK 112, ¶ 5, 293 P.3d 964.

ANALYSIS

¶11 The sole issue in this appeal is whether Oklahoma recognizes a direct action by shareholders against corporate officers and directors based on the facts alleged in the plaintiffs' amended petition. Oklahoma's corporate law is derived from the corporate law of Delaware. Woolf v. Universal Fidelity Life Ins. Co., 1992 OK CIV APP 129, ¶ 6, 849 P.2d 1093. Delaware law recognizes a direct action against corporate officers and directors in certain circumstances. Gentile v. Rossette, 906 A.2d 91 (Del. 2006). "It is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state." Bank of the Lakes v. First State Bank, 1985 OK 81, ¶ 9, 708 P.2d 1089. However, Oklahoma has not previously recognized a direct action by shareholders. The only statutory action authorized is the stockholders' derivative action. 18 O.S. Supp. 2014 § 1126. See Beard v. Love, 2007 OK CIV APP 118, ¶ 19, 173 P.3d 796 ("The rights of shareholders to redress wrongs against the corporation resulting from the acts or omissions of its officers and directors are derivative.") (citing Weston v. Acme Tool Inc., 1968 OK 7, ¶ 12, 441 P.2d 959). The plaintiffs originally filed this case as a derivative action. They have since amended their petition to dismiss their derivative claim. They now attempt to assert a direct action on behalf of themselves and a class of minority shareholders.

I. The Plaintiffs' Allegations

¶12 The plaintiffs' eighty-page amended petition describes the Wheatland transaction and the plaintiffs' understanding of the events leading to that transaction. The petition closely tracks the allegations of their original petition, except that it no longer asserts a derivative action. The plaintiffs allege in Count I that Hamm and Hume, as officers and/or directors of Continental, breached their fiduciary duties to Continental and the minority shareholders by causing Continental "to pay an unfair price for the Wheatland Assets . . . ." They did this, according to the plaintiffs, by: (1) including assets Wheatland did not own in the acquisition; (2) manipulating Continental's projected production estimates to artificially inflate the value of the assets Wheatland did own; and (3) providing misleading information about the value of Wheatland's assets to the financial advisors and the independent committee evaluating the transaction.

¶13 The plaintiffs next allege that Hamm and Hume breached their fiduciary duties by establishing an "unfair process" for Continental to evaluate the Wheatland transaction. The plaintiffs allege that Hamm and Hume accomplished this by selecting Monroe as the chair of the Special Committee to serve their interests rather than Continental's interests by allowing the Hamm children's voting trusts to vote with other minority shareholders, and by approving a proxy statement that concealed material information about the transaction. The plaintiffs allege that Hamm and Hume caused Continental to "issue excessive shares" for the Wheatland assets "causing an unlawful dilution of the percentage of Company stock owned by the Company's minority shareholders." Count II alleges that Hume and Wheatland aided and abetted Hamm in his breach of fiduciary duty. The success of that claim necessarily depends on the viability of the claim stated in Count I.

¶14 In essence, the plaintiffs allege that Hamm and Hume caused Continental to overpay for the Wheatland assets by $100,000,000 in company stock, diluting the value of Continental and the minority stockholders' interest in the company. The plaintiffs seek damages, measured by the excessive amount paid for Wheatland assets by Continental, and rescission of all of the Continental stock issued in excess of the value of the Wheatland assets. The minority interest that the plaintiffs seek to represent accounts for approximately $20,000,000 of the alleged overpayment. According to the plaintiffs' theory of the case, Hamm agreed that he would voluntarily reduce the value of his personal Continental stock by $68,000,000 in exchange for the $75,000,000 worth of Continental stock he received for his share of the Wheatland assets.

¶15 If the plaintiffs are successful, $20,000,000 in value will be restored to their interest. Likewise, $68,000,000 in value will be restored to Hamm's interest and the value of the company would be increased by $100,000,000. The damages the plaintiffs seek, therefore, would flow to Continental and indirectly inure to the benefit of all Continental shareholders. "Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008). The plaintiffs correctly pled this claim as a derivative action in their original petition. And the fact that Delaware law appears to recognize a direct action by stockholders in certain circumstances does not change the "nature of the wrong alleged and the relief requested" by the plaintiffs in this case. Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004) (establishing the test for determining whether a stockholder's claim is direct or derivative). The plaintiffs chose to dismiss their derivative claim. That decision does not necessarily convert their claim into a direct action.

II. Direct Actions under Delaware Law

¶16 Delaware has recognized the theoretical possibility of a direct action since at least 1953. See Elster v. American Airlines, Inc., 100 A.2d 219 (Del. Ch. 1953) (holding that a stockholder's dilution action to enjoin the issuance of stock options was derivative, not direct, because it was essentially a claim of mismanagement of corporate assets). In 1986, the Delaware Supreme Court found that a minority stockholder had stated a direct claim for breach of fiduciary duty against corporate directors. The stockholder alleged that the directors manipulated the sale of stock to a friendly buyer to avoid their removal from office causing a "special injury" to a minority stockholder who was attempting to acquire control of the company. Lipton v. News Int'l, Plc, 514 A.2d 1075, 1078 (Del. 1986).

¶17 In Tooley, the Delaware Supreme Court rejected the "special injury" test used in Lipton for determining when an action was direct rather than derivative.[4]

 
We set forth in this Opinion the law to be applied henceforth in determining whether a stockholder's claim is derivative or direct. That issue must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?

Tooley, 845 A.2d at 1033. That is the same test currently applied by the Delaware courts.

Under Tooley, whether a claim is solely derivative or may continue as a dual-natured claim "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" In addition, to prove that a claim is direct, a plaintiff "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."

El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff, 152 A.3d 1248, 1260 (Del. 2016) (footnotes omitted).

¶18 The leading case recognizing direct claims is Gentile v. Rossette, 906 A.2d 91 (Del. 2006). In that case, the majority stockholder, one of only two directors, caused the company to issue stock in exchange for the debt the company owed him. The stock was issued at an extremely favorable exchange rate and in breach of the credit agreement between the company and the majority stockholder.[5] As a result, the majority's interest in the company went from 61% to 93% and the minority interest was reduced from 39% to 7%. The majority stockholder then negotiated a merger with the company's primary competitor whereby the company's stockholders received stock in the acquiring company in exchange for their company stock. However, the majority stockholder negotiated a separate agreement with the acquiring company whereby it agreed to purchase over 80% of his stock one year after the merger. The majority stockholder testified that he would not have consented to the merger absent that concession. This purchase obligation was not disclosed to any of the company's minority stockholders. The acquiring company filed for bankruptcy within eighteen months after the merger was complete and after the company repurchased the majority shareholder's stock. Id. at 95-96.

¶19 The minority stockholders in Gentile filed a breach of fiduciary duty claim challenging the majority stockholder's conversion of debt to company stock and his solicitation of the purchase commitment he obtained as an inducement to vote for the merger. On appeal, only the debt conversion claim was addressed. The Delaware Supreme Court reversed summary judgment in favor of the majority stockholder on the debt conversion claim. The Court discussed the two separate harms that resulted from the majority stockholder's action, overpayment for the debt and a significant reduction in the value and voting power of the minority interest:

In the typical corporate overpayment case, a claim against the corporation's fiduciaries for redress is regarded as exclusively derivative, irrespective of whether the currency or form of overpayment is cash or the corporation's stock. Such claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction. In the eyes of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

Id. at 99. The Court then discussed and contrasted the harm to the corporation with the separate harm to the minority stockholders in that case.

There is, however, at least one transactional paradigm -- species of corporate overpayment claim -- that Delaware case law recognizes as being both derivative and direct in character. A breach of fiduciary duty claim having this dual character arises where: (1) a stockholder having majority or effective control causes the corporation to issue "excessive" shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders. Because the means used to achieve that result is an overpayment (or "over-issuance") of shares to the controlling stockholder, the corporation is harmed and has a claim to compel the restoration of the value of the overpayment. That claim, by definition, is derivative. But, the public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of this type of transaction is an improper transfer -- or expropriation -- of economic value and voting power from the public shareholders to the majority or controlling stockholder. For that reason, the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited. In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment -- an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have.

Id. at 99-100. The Gentile Court then applied the Tooley analysis to determine if the minority's claim was direct or derivative and found that, after the corporate existence of the company had been extinguished by the merger and the acquiring firm had been liquidated, "the sole relief that is presently available would benefit only the minority shareholders." Id. at 103.

¶20 However, reliance on Gentile to find a direct claim is problematic. Delaware courts have "struggled with how to interpret Gentile and its potential to undercut the traditional characterization of stock dilution claims as derivative." Carsanaro v. Bloodhound Techs., Inc., 65 A.3d 618, 657 (Del. Ch. 2013). "[D]ecisions in which the Delaware Supreme Court has recognized dual-natured claims have been controversial and stand in tension with other decisions that have characterized similar claims as purely derivative." El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff, 152 A.3d 1248, 1262 (Del. 2016) (footnote omitted). "Gentile v. Rossette is a confusing decision, which muddies the clarity of our law in an important context." Id. at 1265 (Strine, C.J., concurring). And, according to Chief Justice Strine:

[Gentile] cannot be reconciled with the strong weight of our precedent and it ought to be overruled, to the extent that it allows for a direct claim in the dilution context when the issuance of stock does not involve subjecting an entity whose voting power was held by a diversified group of public equity holders to the control of a particular interest.[6]

Id. at 1266 (emphasis added).

¶21 The El Paso Court refused to extend Gentile to limited partnership cases, even after observing that Tooley's direct/derivative test is "'substantially the same' for claims involving limited partnerships." Id. at 1260. Further, the Court stated:

We decline the invitation to further expand the universe of claims that can be asserted "dually" to hold here that the extraction of solely economic value from the minority by a controlling stockholder constitutes direct injury. To do so would deviate from the Tooley framework and "largely swallow the rule that claims of corporate overpayment are derivative" by permitting stockholders to "maintain a suit directly whenever the corporation transacts with a controller on allegedly unfair terms.

Id. at 1264 (footnote omitted) (citing Caspian Select Credit Master Fund Ltd. v. Gohl, 2015 WL 5718592 at *5 (Del. Ch. Sept. 28, 2015) ("Gentile cannot stand for the proposition that . . . a direct claim arises whenever a controlling stockholder extracts and expropriates economic value from a company to its benefit and the minority stockholders' detriment.").

¶22 Not only has Gentile been the subject of confusion and criticism in the courts of Delaware, but also that case may be on the verge of being abrogated or, at least, significantly limited. If Oklahoma is to follow Delaware law in recognizing direct claims by corporate stockholders because Oklahoma's corporate law is patterned after Delaware law, we should wait until Delaware decides what its law is. In the eleven years since Gentile was decided, Oklahoma has yet to recognize the direct action theory of liability in shareholder litigation. This is not the case to do so, particularly given the current state of Delaware law.

III. This Case Is Not the Same as Gentile

¶23 Even if we were to recognize a direct action in shareholder litigation, the plaintiffs have failed to state a Gentile-type claim. In its current state, Gentile appears to stand for the general proposition that, subject to the Tooley test, minority stockholders can pursue a direct claim against the majority stockholder for breach of a fiduciary duty to the minority resulting in the transfer of value and voting interest from the minority to the majority.[7] The plaintiffs' allegations fit this general fact pattern. In both cases, assets belonging to a majority stockholder were sold to the corporation he controlled, and the minority stockholders claimed the corporation paid too much for those assets, diluting their interest in the company. But that is where the similarity ends. What the plaintiffs have not done is satisfy the Tooley test for stating a direct claim. For that reason, Gentile is distinguishable.

¶24 The first prong of the Tooley test asks "who suffered the alleged harm (the corporation or the suing stockholders, individually)." El Paso, 152 A.3d at 1260. These plaintiffs allege harm suffered by Continental issuing $100,000,000 worth of unnecessary shares for the Wheatland assets. Dilution claims are generally treated as derivative "because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction." Feldman v. Cutaia, 951 A.2d 727, 732 (Del. 2008) (footnote omitted) (citing Gentile v. Rossette, 906 A.2d 91 (Del. 2006)). As one Chancellor analyzed the issue: "Although there are now more [company] shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, . . . 'injury to voting interests' . . . is absent." In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 766, 774 (Del. 2006) (citing with approval the Chancellor's opinion in In re J.P.Morgan Chase & Co., 2005 WL 1076069).

¶25 The second requirement for a direct action pursuant to Tooley requires proof that the minority stockholders, not the corporation, would receive any recovery. El Paso, 152 A.3d at 1260. In Gentile, the original corporation had been acquired in a merger and no longer existed. The acquiring firm filed for bankruptcy and was liquidated. Consequently, "the sole relief that is presently available would benefit only the minority shareholders." Gentile, 906 A.2d at 103. Continental still exists; it was not absorbed in a merger or liquidated in a bankruptcy. Therefore, the relief presently available would not just benefit the minority stockholders. Although the Gentile plaintiffs were able to satisfy the second prong of the Tooley test, the plaintiffs in this case cannot.

¶26 The final Tooley element requires proof that the plaintiffs "can prevail without showing an injury to the corporation." Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004). The fundamental factual claim of the plaintiffs' direct action is that Continental issued too much stock for the Wheatland assets. That is exactly the same harm plaintiffs alleged in their derivative action, now dismissed. If the damages alleged in the direct claim are the same as those suffered by the corporation, the injury is "properly regarded" as derivative. Feldman, 951 A.2d at 733. The plaintiffs in Gentile were able to satisfy this requirement by arguing that that the company was insolvent at the time the debt conversion occurred. Therefore, the stock issued to the majority stockholder had no value but for the exclusive purchase agreement he was able to negotiate with the acquiring company. There is no allegation that Continental is insolvent, and Hamm is not alleged to have received any undisclosed, much less preferential, terms in this transaction. If the value of the plaintiffs' stock was diluted as a result of this transaction, it is because Continental issued too much stock for Wheatland's assets.

¶27 For these reasons, even if the plaintiffs' amended petition can be viewed as fitting the general fact pattern of a Gentile-type direct action, that pleading does not state a claim. The plaintiffs cannot show that rescission of the alleged excessive shares issued by Continental would be a benefit flowing only to them. They cannot show, without demonstrating harm to Continental, that they can prevail. The harm alleged by the plaintiffs is fully recoverable in a derivative action. While that remedy remains available, the plaintiffs cannot satisfy any of the three prongs of the Tooley test to establish a direct claim.

CONCLUSION

¶28 Derivative suits are subject to certain procedural requirements to prevent interference with the proper management of a corporation. Branzan Alternative Invest. Fund, LLP v. Bank of New York Mellon Trust Co., N.A., 677 Fed. Appx. 496, 497, 2017 WL 655408 (10th Cir. 2017). "The purpose of requiring a precomplaint demand is to protect the directors' prerogative to take over the litigation or to oppose it." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101, 111 S. Ct. 1711, 1719 (1991). Oklahoma law requires no less. "The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors . . . and the reasons for his failure to obtain the action or for not making the effort." 12 O.S.2011 § 2023.1. In this case, the plaintiffs chose to abandon their derivative claim. Were we to recognize a direct action in this case, that theory of recovery would "'largely swallow the rule that claims of corporate overpayment are derivative.'" El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff, 152 A.3d 1248, 1264 (Del. 2016) (quoting Caspian Select Credit Master Fund Ltd. v. Gohl, 2015 WL 5718592, at *5 (Del. Ch. Sept. 28, 2015)).

¶29 Although recognized by Delaware law, we decline to adopt, in this case, the direct cause of action in shareholder litigation. Plaintiffs' amended petition in this case does no more than state a derivative claim, a theory of liability abandoned by the plaintiffs. The judgment of the district court is affirmed, and the plaintiffs' petition is dismissed with prejudice.[8]

 

¶30 AFFIRMED.

 

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] Aronson requires a plaintiff to plead particularized facts creating a reasonable doubt that either (1) a majority of directors are disinterested and independent; or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).

[2] See Warren v. Cent. Bankcorporation, Inc., 1987 OK 14, ¶¶ 6-7, 741 P.2d 846; Beard v. Love, 2007 OK CIV APP 118, ¶¶ 28-29, 173 P.3d 796.

[3] The Special Committee defendants were also dismissed without prejudice and are not parties to this appeal.

[4] For this reason, the Tooley Court specifically disapproved of the Delaware courts' use of the discarded "special injury" test in the holdings and/or analysis in Elster v. American Airlines, Inc., 100 A.2d 219 (Del. Ch. 1953); Bokat v. Getty Oil Co., 262 A.2d 246 (Del. 1970); Moran v. Household Int'l Inc., 490 A.2d 1059 (Del. Ch. 1985); Lipton v. News Int'l, Plc., 514 A.2d 1075 (Del. 1986), and In re Tri-Star Pictures, Inc. Litigation, 634 A.2d 319 (Del. 1993).

[5] The debt conversion rate had been established by contract, but the controlling shareholder breached that contract using a much more favorable conversion rate. The plaintiffs in this case do not allege that Continental breached some preexisting contract with Wheatland, Hamm and Hume that had previously determined the price at which Wheatland assets would be purchased.

[6] It is undisputed that the plaintiffs held only a minority interest before the Wheatland transaction and that their interest was diminished by .5%.

[7] This description does not include direct claims where the rights being pursued are contract rights belonging to the stockholders and not the corporation. See, e.g., Grimes v. Donald, 673 A.2d 1207, 1213 (Del. 1996) (recognizing as direct, a minority stockholder action seeking to invalidate certain employment contracts that the plaintiffs claimed abrogated the board of directors' responsibility to the shareholders). Further, a Gentile-type direct action is not necessarily limited to breach of fiduciary duty claims. See Branzan Alternative Invest. Fund, LLLP v. Bank of New York Mellon Trust Co., N.A., 677 Fed. Appx. 496, 2017 WL 655408 (10th Cir. 2017).

[8] This Opinion does not address any right the plaintiffs may have to revive their derivative claim.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 129, 849 P.2d 1093, 64 OBJ 1114, Woolf v. Universal Fidelity Life Ins. Co.
Discussed
 2007 OK CIV APP 118, 173 P.3d 796, BEARD v. LOVE
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 14, 741 P.2d 846, Warren v. Century Bankcorporation, Inc.
Discussed at Length
 1994 OK 98, 880 P.2d 371, 65 OBJ 2520, Indiana Nat. Bank v. State Dept. of Human Services
Discussed
 1994 OK 88, 880 P.2d 902, 65 OBJ 2414, Groce v. Foster
Discussed
 1968 OK 7, 441 P.2d 959, WESTON v. ACME TOOL, INCORPORATED
Discussed
 2008 OK 5, 177 P.3d 565, GENS v. CASADY SCHOOL
Discussed
 2009 OK 65, 222 P.3d 21, KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed
 2012 OK 112, 293 P.3d 964, IN THE MATTER OF THE ESTATE OF BELL-LEVINE
Discussed
 1985 OK 81, 708 P.2d 1089, 56 OBJ 2321, Bank of the Lakes, Langley, Okl. v. First State Bank, Ketchum, Okl.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
 12 O.S. 2023.1, Derivative Actions by Shareholders
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 1126, Shareholder's Derivative Action - Allegation of Stock Ownership
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA